Allen, J.
 

 In order to decide this controversy, it
 
 *469
 
 is necessary to consider the evidence shown by the record. The automobile was being operated north on East 105th street in the city of Cleveland by the husband of the plaintiff, who was herself seated in the front of the car. The accident occurred at the intersection of Carnegie avenue and East 105th street. The street car tracks run north and south on East 105th street. When the automobile arrived at the intersection, Henderson, the plaintiff’s husband, stopped the automobile, as the traffic light was red for north and south traffic. When the light changed to green for north and south traffic, Henderson drove into the intersection and stopped his car to the right of the center, as the municipal ordinances require in the city of Cleveland, in order that he might move westward on Carnegie avenue when the traffic light changed. Another automobile operated by John Lingro drew up behind Henderson’s car. Lingro also intended to proceed west on Carnegie avenue. As the traffic light changed to green for east and west traffic, Lingro sounded his horn. The plaintiff, Mrs. Henderson, seeing that the light had changed, said to her husband, “The light is green. Go ahead.” Henderson looked up, observed that the light was green, and that the intersection was clear, and started his car. At the street car tracks a northbound street car collided with the automobile and plaintiff was injured. The automobile was struck on the left side, between the hood and the seat of the driver.
 

 The defendant in error strongly contends that the record discloses no evidence of negligence on the part of the railway company and hence the directed verdict must be sustained. This contention requires
 
 *470
 
 some specific consideration of the- testimony of Lingro and Henderson.
 

 Lingro was driving the automobile which had pulled up behind the Henderson car, .also waiting for the light to turn in order that he might proceed westward on Carnegie avenue. He testified, among other things, the following:
 

 “Q. Now, when the light changed, what did you do? A. When the light changed?
 

 “Q. Yes. A. Well, I stayed there. I had to wait until Henderson got out of my way to pull west.
 

 “Q. Did you do anything to hurry him up? A. Blew the horn when the green light was on, it was go.
 

 “Q. The green light for what? A. To go west.
 

 “Q. Then when the green light came on and you blew your horn, what did Henderson do? A. Well, Henderson turned around and put it right in gear.
 

 “Q. Did you see him start up? A. Yes, sir.
 

 “Q. Which way did he go? A. Why, he turned to the left, turned west.
 

 ‘ ‘
 
 Q. Then after he turned to go west, what further happened? A. Well, the street car — I heard that street car coming, motorman ringing the bell in behind.
 

 “Q. Behind you? A. Behind me. He was quite a ways coming up from Cedar. He was going toward Euclid, going south.
 

 “Q. Then what happened? A. When I saw it it was too late to pull on through, but the green light was for us to go down west. Well, the street car went through and hit Henderson.”
 

 It was also stated by Lingro that the street car went through the intersection “about twenty-five to
 
 *471
 
 thirty
 
 maybe
 
 when he was ringing the bell coining on through.”
 

 Henderson testified as follows :
 

 “Q. Now,
 
 what, if anything, was the first thing you noticed after you came to a stop as to the light changing? Were you observing it or not? A. I was watching the light. That is all I know.
 

 “Q. Did you hear anything? A. No, sir; not until the light turned.
 

 “Q. Then what did you hear? A. Somebody behind me blew their horn.
 

 “Q.
 
 And when did that horn sound with reference —was the light red, or yellow, or green for going down Carnegie? A. Green.
 

 “Q. And then what did you do? A. I started to go across the car tracks.
 

 “Q. When you got on the car track what, if anything, happened? A. The street car hit me, hit the machine.
 

 “Q. Hit the machine? A. Yes. *
 
 *
 
 *
 

 “Q. So, Mr. Henderson, you don’t know whether the street car was in that intersection before the street light, traffic light turned green, or not, do you ? A. There was no street car there.
 

 “Q. I say, you don’t know of'your own knowledge, do you? A. Yes, sir.
 

 “Q. You didn’t see it, did you? A. No, I didn’t see it.
 

 “Q. Then you don’t know, do you? A. If it had been there I would have seen it.
 

 “Q. You did not look, did you? A. I looked at the street ahead of me. * * *
 

 ‘‘Q. Just describe where you looked. Where did you look? A. I looked up at the light and the light
 
 *472
 
 turned green. I looked ahead. My vision was wide enough to see the whole width of Carnegie avenue.
 

 “Q. Now, looking where you did look, did it take in the full intersection? A. Yes, sir.
 

 “Q. Was the street car in the intersection at that time? A. No, sir.
 

 “Q. Did you yourself see that light was green? A. Yes, sir.”
 

 Lingro, Henderson, and Mrs. Henderson all testified that the light was green for east and west traffic at the time the Henderson car proceeded. This was some evidence that the light, if properly operating, was red for north and south traffic. Hence there was some evidence tending to establish the negligence of the railway company.
 

 The trial court directed a verdict for defendant upon the ground of the contributory negligence of the plaintiff, saying that “she was guilty of contributory negligence as a matter of law when she attempted to make an investigation as to whether or not it was safe to proceed to cross that crossing and did not conclude and complete her investigation.” The Court of Appeals affirmed this judgment. We differ with this conclusion.
 

 It is in brief the contention of the defendant railway company and with this contention the lower courts agreed that it constituted negligence as a matter of law for Mrs. Henderson to instruct Henderson to “ go ahead, ’ ’ relying solely upon the change in the electric signal light in her favor. This theory of the case is based upon Mrs. Henderson’s testimony as follows:
 

 “Q. * * * And as soon as you observed the
 
 *473
 
 traffic light up in the center turn green, you told your husband to go ahead? A. Yes, sir.
 

 “Q. Now, you did that before you looked to see whether there was a street car, didn’t you? A. I was watching the light; I wasn’t watching any street car.
 

 “Q. You say you weren’t watching to see if there was any street car in the intersection, were you? A. I was looking at the light.
 

 “Q. So you don’t know, Mrs. Henderson, whether or not the street car was yet in the intersection and crossing, do you? A. No.
 

 “Q. And when you told your husband to go ahead he did go ahead, didn’t he? A. Yes, sir.”
 

 It has been recently held by this court that: “It is not negligence for a person, entering a street intersection with the ‘go’ traffic signal, to rely upon all persons from a cross street, who are not at the time in the intersection, observing the ‘ stop ’ signal so long as it is against them.”
 
 Cleveland Ry. Co.
 
 v.
 
 Goldman,
 
 122 Ohio St., 73, 170 N. E., 641. This applies to persons seated in an automobile starting to proceed across a street intersection, as well as to pedestrians. It was not negligence as a matter of law for Mrs. Henderson, when she observed the “go” signal for westward traffic, to rely upon the fact that all other persons moving north and south would observe the “stop” signal. It was not negligence as a matter of law for her to say to her husband, ‘ ‘ The light is green. Go ahead, ’ ’ without looking to see whether any traffic was proceeding against the light.
 

 
 *474
 
 The judgment of the Court of Appeals will he reversed, and the cause remanded.
 

 Judgment reversed and cause remanded.
 

 Marshall, C. J., Day, Kinkade and Robinson, JJ., concur.
 

 Jones and Matthias, JJ., not participating.