THOMAS, APPELLANT, *v.* PENNSYLVANIA RD. CO., APPELLEE.

(No. 3432—Decided March 12, 1942.)

*Messrs. Baldwin & Nolan,* for appellant.
*Messrs. Burr, Porter, Stanley & Treffinger,* for appellee.

GEIGER, P. J.   This matter is before this court on an appeal from the order of the Court of Common Pleas directing a verdict upon motion of the defendant after the introduction of the plaintiff's evidence.

The entry appealed from, dated October 11, 1941, is,

in substance, that a jury was impaneled and the plaintiff 'presented his evidence and rested; on motion of defendant the court instructed the jury to return a verdict in favor of the defendant and against the plaintiff and a verdict was so returned. The court entered judgment upon the verdict in favor of defendant and against the plaintiff.

The appeal is on questions of law from the final order.

The petition may be briefly summarized to the effect that the defendant is a corporation operating a railroad through the city of Columbus over Grandview avenue in Franklin county, Ohio; that Grandview avenue is a public thoroughfare crossing the railroad tracks at approximately right angles; that the defendant for several years has maintained at the crossing a watchman for the purpose of directing traffic and warning vehicular traffic of the approach of trains; that on February 13, 1941, plaintiff was employed in distributing dairy products; that in covering his route it was necessary for him to travel on Grandview avenue; that he had operated his employer's trucks for a period of nine months; that each day he had occasion to pass over the intersection of Grandview avenue and the tracks; that on each occasion he observed a watchman at the crossing, who regulated vehicular traffic at that point; that on the above-named day he was operating the dairy truck in a southerly direction on Grandview avenue and as he approached the tracks he observed an engine to the east of the intersection and the watchman at his post; that he proceeded until he had reached the crossing, keeping his eyes upon the watchman for any signal; and that when the front wheels of his truck were upon the railroad crossing and across the north track, an eastbound express train struck the truck causing the damage of which he com-

plains. He alleges that the injuries were due wholly to the negligence of the defendant in the following particulars:

(1) That the defendant failed to give any warning by whistle, bell or otherwise of the approach of the train from the west.

(2) That the defendant by its authorized agent was operating its train at a dangerous speed, to wit, 50 miles per hour.

(3) That the defendant maintained a watchman for the purpose of regulating vehicular traffic and to warn oncoming traffic of the approach of trains. That that watchman failed to give the plaintiff any notice or warning of the express train from the west.

The defendant answers admitting certain matters as to its functions and to the location of the tracks maintained by it. Defendant admits that it has for years past maintained at the crossing a watchman stationed for the purpose of directing traffic across the intersection and warning vehicular traffic of the approach of trains; admits that on the 13th day of February 1941, plaintiff was operating his truck southwardly on Grandview avenue; that he continued south on Grandview avenue until he reached the crossing; and that a collision occurred between the truck and the train. All other allegations are denied.

As a second defense, it is alleged that if the defendant was negligent and the plaintiff sustained the injuries, the plaintiff was also negligent and his negligence contributed to and proximately caused the injuries.

This answer is denied by plaintiff.

The plaintiff assigns the following errors:

(a) That the lower court should have permitted the case to be submitted to the jury on all the evidence.

(b) There is no evidence establishing that the

plaintiff was guilty of contributory negligence as a matter of law.

(c)   That the court erred in directing the verdict.

The only pertinent facts relating to contributory negligence are those relating to the degree of care exercised by the plaintiff. The plaintiff, when within 100 feet of the tracks, looked to the west but did not see any trains approaching. When he was within 20 or 25 feet of the crossing he looked to the east and observed a freight train, either standing or moving slowly, approximately 250 feet east of Grandview avenue. From that point on plaintiff relied upon the watchman to signal him, and the watchman gave no signal. Evidence is introduced to the effect that there were trees, underbrush and telephone poles along and adjacent to the railroad right of way which obstructed the view to the west of those approaching from the north.

The plaintiff asserts that his action did not constitute contributory negligence as a matter of law and that the case should have been submitted to a jury under proper instructions. Counsel for the defendant assert the contrary.   This is the only question for the consideration of the court.

We shall briefly sketch the testimony offered by the plaintiff to determine whether he was guilty of contributory negligence. This will be considered in connection with any admissions of the defendant in its answer.

Plaintiff stated that as he approached the tracks he looked westward when about 100 feet from the tracks and saw nothing, and when within 20 or 25 feet of the crossing he looked to the east where he saw a freight train moving slowly or standing still at a distance of about 250 feet from the crossing. He then saw the watchman as he had seen him from time to time. The

watchman was standing to the east edge of Grandview avenue on the north side of the track. He had his stop sign in his hand but he did not signal for plaintiff to stop or give him any indication that there was danger. From the point that he first observed the watchman, plaintiff kept his eyes on him. He did not hear any whistle or the ringing of any bell. He brought his automobile nearly to a stop before he went on the westbound track. From the point of 10 or 15 feet from the track where he brought his automobile nearly to a stop, he moved toward the track on which he was struck, at about six or eight miles per hour. There were a number of telegraph poles with crossarms on the private right of way of the defendant which might obstruct the view, not entirely but to some extent.

The other witnesses who were offered by the plaintiff were three employees of the state highway department who were approaching northward on Grandview avenue and had stopped their truck for the passage of the westbound freight train. In substance, their testimony is that they stopped the truck 50 feet south of the tracks. The watchman had just come out of his shanty and was looking east and had come from the corner of his shanty just to the edge of the pavement of Grandview avenue, five or six feet from his watchtower. He had a signal or stop sign in his hand but at no time gave any signal to anybody. The watchman was in plain view of the traffic coming in either direction. The watchman did not give any signal. He had his semaphore in his hands but was dragging it. The train approaching from the east was far enough away to permit a safe crossing by the truck. The watchman walked leisurely, looking over his shoulder at the freight train coming from the east. He started toward the track and walked out on Grandview avenue with his stop semaphore reversed, but gave no signal. He

walked toward the avenue, taking his time and watching the switch engine. He did not give any signal and did not have his signal up to give the sign to stop. When the watchman walked out from the shanty he was dragging the semaphore. He was "taking his own good time." He gave no signal to anyone to stop.

In passing upon the motion for directed verdict, the court below stated, in substance, that, giving the testimony the most favorable construction to which it is entitled, the court is of the opinion the plaintiff is guilty of negligence as a matter of law. The court stated: "Obviously the authorities are all agreed that, at least, there is some additional obligation upon the plaintiff that he must exercise, and a careful consideration of the evidence does not show that he exercised care that an ordinarily careful person would under the same or similar circumstances." The court made substantially the same statement to the jury when instructing it to return a verdict.

This court must now determine whether the plaintiff was guilty under the law of contributory negligence such as bars his right to recover.

We are of the opinion that we may safely be guided by the principles announced in the case of *Railway Co.* v. *Schneider,* 45 Ohio St., 678, 17 N. E., 321. The syllabus, paragraph one, holds that where a railroad company uses tracks across a generally traveled public street and the crossing thereby is rendered exceptionally dangerous, it is bound to exercise care proportioned to the increased danger to avoid injury to persons using the crossing, and should, in the exercise of such care, as a reasonable precaution for their safety and means of preserving the legitimate use of the street, maintain flagmen or gates at such crossing or adopt other equally adequate measures for that purpose.

Paragraph 3 holds, in substance, that when gatemen are maintained, it is their duty to observe the tracks and know when they become dangerous for persons to cross, and when it is so, to close the gates and keep them closed until the tracks are clear.

Paragraph three reads as follows:

"Persons approaching the crossing or about to cross have the right to presume, in the absence of knowledge to the contrary, that the gatemen are properly discharging their duties, and it is not negligence on their part to act on the presumption that they are not exposed to dangers which can arise only from a disregard by the gatemen of their duties. Hence an open gate with the gateman in charge is notice of a clear track and safe crossing, and, in the absence of other circumstances, when the gates are open and the gatemen present, it is not negligence in persons approaching the crossing * * * to pass on to the tracks through the open gates without stopping to listen, though the view of the tracks on either side of the crossing is obstructed; *nor in such case is their failure, when at a distance of twenty-five feet from the track, to look for locomotives one hundred and fifty feet or more from the crossing, negligence, though they could have been seen.*" (Italics ours.)

The court states, through Williams, J., at page 689:

"It is undoubtedly true that persons approaching railroad crossings are bound to the reasonable and prudent exercise of their faculties to discover danger, and to the use of proper care to avoid injury; and, if the omission of either contributes to their injury they are generally without remedy. But whether they have so exercised their faculties and used such care must depend upon the particular circumstance; for instance, it has been held that the absence of the usual signboard

of warning is a circumstance which may properly go to the jury to enable them to determine whether the person attempting to cross the railroad track has been guilty of such negligence as would defeat his recovery. * * * 'when the question of contributory negligence depends upon a variety of circumstances from which different minds may arrive at different conclusions as to whether the plaintiff exercised proper care and caution, the question should be submitted to the jury under proper instructions.' ''

See *Railroad Co.* v. *Whitacre,* 35 Ohio St., 627.

The rule as to contributory negligence is that if the plaintiff's own testimony in support of his cause of action raises a presumption of contributory negligence, the burden rests upon him to remove that presumption.

Paragraph four of the syllabus in *Hamden Lodge* v. *Gas Co.,* 127 Ohio St., 469, 189 N. E., 246, holds:

"4. Where from the evidence reasonable minds may reach different conclusions upon any question of fact, such question of fact is for the jury. The test is not whether the trial judge would set aside a verdict on the weight of the evidence."

This rule has been repeated many times.

In *Colwell, Admr.,* v. *Dwyer,* 33 Ohio Law Abs., 455, 35 N. E. (2d), 789, opinion by this court, it is held:

"2. Upon motion to direct a verdict the party against whom the motion is made is entitled to have the evidence construed most strongly in his favor, but if upon any essential issue, after giving such favorable construction, reasonable minds can come to but one conclusion and that conclusion is adverse to such party, the judge should direct a verdict against him."

See *Metropolitan Life Ins. Co.* v. *Huff,* 128 Ohio St., 469, 191 N. E., 761.

In *Lohrey* v. *B. & O. Rd. Co.,* 131 Ohio St., 386, 3 N. E. (2d), 54, it is held:

"While the driver of a car approaching a railroad crossing where safety gates are maintained is entitled to place some reliance upon the indication of safety which the upright gates imply, yet, from the moment he is warned by the descending gates of danger from approaching trains, the driver is bound to use such care as ordinarily prudent men would use under similar circumstances."

The court through Jones, J., at page 389 states:

"While safety gates in an upright position may give the traveler assurance that he can safely pass, yet no one can know when they will start to descend; but when they do they give to the traveler assurance of imminent danger which calls for caution. * * * A driver upon a highway can not rely upon an assumption that a crossing protected by gates will always remain safe."

The court refers to cases in which it has been held:

"The failure of such alarms to exercise their proper functions does not absolve the traveler from the duty of exercising such care as ordinarily prudent men would use under similar circumstances."

Williams, J., dissents from the judgment of the court and gives a review of holdings of the court in cases of safety gates and concludes:

"The prevailing opinion possibly is that, while a traveler is not relieved from the duty of exercising care in crossing a railroad track by the fact that the _safety gates are standing open,_ such fact is to be considered by the jury in determining whether he exercised due care under the circumstances."

The watchman in the case at bar did not at any time raise his semaphore or give any warning to the traveler which would cause him to be guilty of contributory negligence by disregarding the warning of danger that might have been so conveyed. If the watchman had shown by the elevation of his semaphore or any other

visible activity that there was a train approaching from the west, it would have imposed the obligation upon the driver of the truck to take such precautions as would properly relieve him from the implication of contributory negligence which would deprive him of the right to recover.

See *Henderson* v. *Cleveland Ry. Co.*, 123 Ohio St., 468, 175 N. E., 863.

A case much relied upon by defendants is that of *Columbus, Delaware & Marion Electric Co.* v. *O'Day, Admx.*, 123 Ohio St., 638, 176 N. E., 569. The third paragraph of the syllabus holds:

"3. The presence of an automatic signal alarm, voluntarily instituted and operated by an interurban railway company at a city street crossing, does not absolve a traveler upon the highway from the exercise of the care that a reasonably prudent person would exercise under all the circumstances. Such care upon the part of a driver of an automobile includes the obligation of exercising the faculties of sight and hearing, when such driver is far enough from the railway track to be able to stop his automobile before reaching the crossing."

The *O'Day* case arose on error proceedings from this county. It will be observed that it does not relate to a directed verdict, but relates to the interpretation to be given to interrogatories answered by the jury. Allen, J., in announcing the decision of the court, says:

"There is a material distinction between the situation presented where a pedestrian or traveler in an automobile acts upon the 'go' signal of a traffic light required by a municipality to be maintained at an intersection, and the situation here presented, where a traveler approaches an intersection at which an automatic signal is maintained and operated purely on its own initiative by a public utility. In the first instance,

there is a positive prohibition imposed by law upon entrance by any traffic into the intersection in opposition to the light. *In the second instance, the signal is a warning merely.* It indicates the presence of the railroad and the possibility of danger. * * * The signal voluntarily operated by the utility is merely intended to impress upon the mind of the approaching traveler more vividly than by any other means the fact that before him lies a dangerous track which he must cross.

"Since the jury found that O'Day could have seen the interurban car in time to stop his automobile in a place of safety if he had looked, and that he did not look to the south for an interurban car when far enough from the railroad track to stop his automobile before crossing, the trial court committed reversible error in not rendering judgment for the defendant. The conflict was clear and irreconcilable as between the special findings and the general verdict in favor of the plaintiff * * *. *Since the jury found these facts,* necessarily the decedent was guilty of contributory negligence. Under Section 11464 [now Section 11420-18], General Code, the special findings control, and therefore the motion for judgment upon the interrogatories should have been sustained." (Italics ours.)

The court in deciding this case based its decision upon the provisions of Section 11464 (now Section 11420-18), General Code, to the effect that special findings of the jury control. The complaint in this case is that the court took the case from the jury before there were any special findings or general verdict. Had the case been submitted to the jury and an interrogatory answered, it would have been a basis for the court to have rendered a judgment upon the answer of the special interrogatories. But, as stated before, this does not arise in this case as the jury was not permitted

to pass upon the question under the facts developed. There are many other differences that seem to us to distinguish the *O'Day case,* in addition to the fact that it is based upon the interpretation of the statute giving preference to a special finding of the jury over the general verdict as above pointed out. Among those matters that we might mention is that the warning was there given by an automatic signal alarm voluntarily instituted and operated by the company at a street crossing. The court there holds that its failure to operate is not in the nature of an implied invitation to cross. We can readily say that had the warning sign at this particular crossing been an automatic signal, its failure to operate might not have constituted an implied invitation to cross. But here we have a living watchman whose duty it is to protect the traveler.

The case of *Railway Co.* v. *Schneider, supra,* relates to the action of a gateman as contradistinguished from the protection afforded by an automatic light. The court in that case concludes that an open gate with a gateman in charge is notice of a clear track and safe crossing and in the absence of other circumstances when the gates are open and the gateman present, it is not negligence to pass onto the tracks without stopping to listen, though the view is obstructed, "nor in such case is their failure, when at a distance of 25 feet from the track, to look for locomotives 150 feet or more from the crossing, negligence, though they could have been seen."

The case of *D., T. & I. Rd. Co.* v. *Rohrs,* 114 Ohio St., 493, 151 N. E., 714, relied upon by the defendant is not comparable to the case at bar, inasmuch as it did not in any way relate to a crossing watchman.

This court has had under recent consideration a

matter much the same, although not identical in fact with the case at bar, being the case of *Kipp* v. *B. & O. Rd. Co.*, 28 Ohio Law Abs., 16. Hornbeck, J., delivering the opinion of the court, states, after reciting the testimony:

"This testimony in our judgment required the conclusion that the jury had the right to find, if it believed the statement of plaintiff, which it had the full right to do, that the watchman for defendant company signalled the plaintiff that the tracks of defendant company were clear for him to pass onto and over them. We then have this factual situation upon the most favorable view of the evidence in behalf of the plaintiff, namely, an intersecting crossing at which toward the west the view of plaintiff was impaired * * *. Failure on the part of plaintiff to look at any time when looking would be effective as he approached the crossing. Does this factual proof require the conclusion that as a matter of law the plaintiff was chargeable with contributory negligence?"

The judge delivering the opinion holds that the action of the crossing watchman was, as a matter of fact, an "express invitation" to move on across the tracks and the court concludes that the attempted passage by the truck driver under such circumstances is not contributory negligence.

While this case is not identical with that above cited, there is much that is pertinent.

In the case at bar the driver of the truck found a man, who had customarily directed his movements over the track, standing by the highway, with a reversed semaphore, looking to the east toward a stopped or slowly moving freight train, never giving any attention to or looking toward the west from which the fast moving express train was approaching. We can not avoid the conclusion that the action of this flagman

was an invitation for the truck driver to cross the tracks. The watchman failed to give any signal and to all appearances was present upon the roadside to flag the automobile drivers as against a slow moving freight train which would not have prevented the safe passage of the truck driver over the track.

We are of the opinion that the court in this case erred in directing a verdict in favor of the defendant. The case should have been submitted to the jury under proper instructions.

*Judgment reversed and cause remanded.*

BARNES and HORNBECK, JJ., concur.