INMAN, APPELLEE, *v.* THE BALTIMORE & OHIO RAILROAD CO., APPELLANT.*

*Motion to certify the record overruled, July 7, 1958. Appeal dismissed, 168 Ohio St., 335.

(No. 4752—Decided May 7, 1958.)

*Mr. Ray J. McGowan* and *Mr. Rosser J. Jones,* for appellee.
*Messrs. Wise, Roetzel, Maxon, Kelly & Andress,* for appellant.

STEVENS, J. The action filed in the Court of Common Pleas of Summit County, Ohio, by plaintiff, sought the recovery of damages for personal injuries sustained by him while in the performance of his duties as a crossing flagman at Home and Tallmadge Avenues in the city of Akron.

The defendant in the trial court is a railroad company, engaged in interstate commerce within the meaning of the Federal Employers' Liability Act (Section 51 *et seq.*, Title 45, U. S. Code), and the plaintiff was an employee of defendant, concededly within the class of persons entitled to the benefits of that Act.

The petition of plaintiff alleged that:

On January 2, 1952, plaintiff, while discharging his duties as crossing flagman, was standing on Tallmadge Avenue, at a point just west of defendant's tracks at the Home Avenue intersection with Tallmadge Avenue, warning the traveling public of the presence of one of defendant's trains, when he was suddenly and violently struck by an automobile being driven in a northeasterly direction on Home Avenue and making a left turn into Tallmadge Avenue at said intersection, with resultant serious injuries.

As the case was submitted to the jury by the trial court, the petition contained the following specifications of negligence:

1. "* * * the defendant negligently and carelessly ordered and directed plaintiff to perform his duties as a flagman at said crossing, when it was impossible for him to observe vehicles entering said intersection from Home Avenue and without taking any measures to prevent him from being struck, as aforesaid."

2. "* * * failed to place another employee at said crossing to watch for other trains approaching said crossing, while plaintiff was on duty flagging, to the end that plaintiff could keep a lookout and watch for traffic proceeding from Home Avenue into said intersection, and particularly the vehicle that struck plaintiff as aforesaid."

For answer to the petition of plaintiff as subsequently amended, defendant admitted the following:

1. Its corporate existence as a railroad, owning and operating railroad lines through several parts of the United States, one of which lines extends into and through the city of Akron, Ohio.

2. That on January 2, 1952, plaintiff and defendant were engaged in interstate commerce.

3. That Tallmadge and Home Avenues were duly dedicated public streets in the city of Akron, which intersected.

4. On information and belief, that on or about January 2, 1952, at 12:10 a. m., while plaintiff was on duty as a flagman at the above-mentioned intersection, he was struck by an automobile and sustained some personal injuries, but denied that the same were of the nature and character alleged.

All other allegations of the petition were denied.

Upon trial to a jury, a verdict for plaintiff in the amount of $25,000 was returned, upon which judgment was duly entered. This appeal on questions of law ensued.

The pleadings in this case do not, in terms, present the claim of plaintiff that defendant negligently failed to furnish plaintiff with a safe place to work, under the Federal Employers' Liability Act. However, in view of the pronouncement in paragraph 16 of the headnotes in *Denny* v. *Montour R. Co.*, 101 F. Supp., 735, that question was in the case, and the court was required to charge thereon.

It is stated in *Ellis* v. *Union Pacific Rd. Co.*, 329 U. S., 649, at p. 653, 91 L. Ed., 572, 67 S. Ct., 598:

"The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury. 45 U. S. C. Section 51 * * *."

In *Bailey, Admx.,* v. *Central Vermont Ry., Inc.*, 319 U. S., 350, 87 L. Ed., 1444, 63 S. Ct., 1062, the fourth paragraph of the headnotes appearing in the Lawyers Edition states:

"4. An employer is under a common-law duty to use reasonable care in furnishing his employees with a safe place to work."

It is thus apparent that, while the Act itself does not in terms require the employer to furnish the employee with a safe place to work, the cases decided by the Supreme Court of the United States under the Act do impose upon the employer the common-law duty to exercise reasonable care to furnish his employee with a safe place to work.

The basis for recovery by an injured employee under the Federal Employers' Liability Act is therefore negligence of the employer in failing to provide a safe place for the employee to work, which negligence proximately causes, in whole or in part, the injuries of which complaint is made.

In 29 Ohio Jurisprudence, Negligence, Section 68, the following appears:

"It is a well-established rule that to warrant a finding that negligence is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence alleged, and that it was such as might or ought to have been foreseen in the light of the attending circumstances. In contemplation of law, an injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable."

Let us now examine this record in the light of the foregoing statement of the applicable rules.

Tallmadge Avenue, an east and west traffic artery in the city of Akron, is intersected by Home Avenue, a street running in a northeasterly and southwesterly direction. Three tracks

of defendant extend through the intersection of these two streets in a northwesterly and southeasterly direction, the most easterly being a switch track, the middle track the eastbound main track, and the most westerly the westbound main track.

The defendant installed the following equipment to warn the defendant and the traveling public of the approach of trains to said crossing:

Highway warning signals known as "flasher lights" at all street approaches to the crossing, consisting of two lights with red lenses directed toward approaching traffic, which, when activated, gave a flashing signal warning to motorists of the approach of a train. On the side of the body of these lights were windows which emitted a white light when the lights were in operation.

In the watchman's shanty at the southeast corner of Tallmadge Avenue, the defendant installed a warning or "tell-tale" light to warn the watchman of the approach of trains, and a listening phone on which could be heard the dispatcher at XN Tower, 1½ miles north of the crossing, issuing orders to trains and giving their location on the line.

Outside the shanty, on a 25-foot pole near the south curb of Tallmadge Avenue east of the crossing, was an amber light, which was activated and would light up when trains approached the crossing.

To the south of the crossing was a block signal on a mast 27 feet high, consisting of a disc with two red lights in a horizontal position, and two yellow lights in a diagonal position, with a white light in the center of the disc.

A red signal appeared when a westbound train was within the block, requiring the engineer of the following train to stop before reaching the signal.

A yellow signal required the engineer of a westbound train in the block to reduce his speed to 35 miles an hour.

The white light, which could be seen from the crossing, would appear when either the red or yellow signal was in operation.

When none of said lights was in operation, this indicated the absence of a westbound train from the block.

As an eastbound train approached the crossing, at a point

2,066 feet south of the crossing, the wheels of the train would strike an insulated joint, which put in operation the flasher light circuit, the block signal circuit, the "tell-tale" light in the watchman's shanty, and the amber light on top of the pole near the south curb line of Tallmadge Avenue—all of which signals would remain in operation until the last car of the eastbound train passed over another insulated joint 75 feet north of the crossing, when all of said signals would discontinue operating.

Upon the approach of a westbound train to the crossing, when the wheels thereof reached a point 3,455 feet north of the crossing, they would strike an insulated joint, setting into operation the block signal heretofore mentioned, the "tell-tale" light in the watchman's shanty, and the amber light south of the curb on Tallmadge Avenue.

When the wheels had reached a point 2,000 feet north of the crossing, the flasher lights would be activated, and would continue to operate until the wheels of the last car passed over an insulated joint 105 feet south of the crossing, which would deactivate them.

The evidence shows all of these signals to have been in proper working order on January 2, 1952, at the time here in question.

In addition to the foregoing, the crossing flagman was furnished with one "stop" disc sign, three red flags for use by day, two red lanterns, one white lantern, and one green lantern, for use when flagging at night, six or more fusees, six or more torpedoes, and a shrill whistle.

Stop signs were erected for Home Avenue traffic approaching the crossing from the south, on the right or easterly side of Home Avenue before the tracks were reached, and near the intersection of Home Avenue where it joined Tallmadge Avenue —the latter being a main thoroughfare.

The crossing and intersection were well lighted by street lights at the time under consideration.

The plaintiff, on January 2, 1952, had been employed by defendant as a crossing watchman for about three years, working the 11 p. m. to 7 a. m. shift at the Bettes Corners grade crossing.

Shortly after midnight on said date, the tell-tale light in the watchman's shanty started flashing, indicating the approach of a

train from the west, and the other warning signals heretofore described went into operation.

In accordance with his instructions, plaintiff stationed himself in the center of Tallmadge Avenue, to the west of the crossing, two to three feet west of the westerly rail of the westbound track, having with him his whistle, and lighted red and green lanterns.

When the train got close enough to the crossing, plaintiff blew his whistle and began swinging his red lantern.

While thus engaged, one James Ball was stopped on Home Avenue in a line of traffic, several cars back from the intersection of Home Avenue and Tallmadge Avenue.

There is uncontroverted evidence in this record that, at the time of plaintiff's injury, Ball was under the influence of alcohol.

As the train passed over the crossing, plaintiff took a step backward, when he was struck by Ball's automobile, which had left the northbound line of traffic on Home Avenue, and had proceeded northerly upon the left, or westerly, side thereof, to the intersection of Home and Tallmadge Avenues, where Ball, at a high rate of speed, made a short turn onto Tallmadge Avenue, and, proceeding westerly, collided with and injured plaintiff.

In so doing, Ball violated five state traffic statutes, and municipal ordinances of the city of Akron dealing with the same subjects.

At the conclusion of all the evidence, defendant moved for a directed verdict, which motion was overruled; and after the return of the verdict for plaintiff, defendant moved for a judgment notwithstanding the verdict, which motion was also overruled.

There are seventeen assignments of error presented by appellant, only a few of which will be discussed.

The assignment of error designated ''1(a)'' in appellant's brief, dealing with the alleged inconsistency between the special findings of fact and the general verdict, is, in our opinion, completely negatived by the decision of the Supreme Court of the United States in the case of *Arnold* v. *Panhandle & Sante Fe Ry. Co.,* 353 U. S., 360, 1 L. Ed. (2d), 889, 77 S. Ct., 840.

We find no prejudicial error in connection with this assignment.

Assignment "1(b)" asserts:

"The trial court erred in overruling the motion of defendant for judgment notwithstanding the verdict, based on the failure of plaintiff's proof; the trial court erred in overruling the motion of defendant for a directed verdict and for judgment in its favor at the close of all the evidence."

The entire record in this case has been studied by the members of this court, as have been the law and the cases defining the obligations of the parties to this litigation.

If the predicate for liability of defendant employer is negligence, which proximately caused, in whole or in part, the injuries complained of by plaintiff, then, as part of the subject of proximate cause, the question of foreseeability was presented.

There is no evidence in this record of failure on the part of defendant to furnish plaintiff with all of the safeguards in the performance of his work, which reasonably prudent operators of railroads furnish under like or similar circumstances. And there is further no evidence of prior occurrences of the kind here under consideration, which would put the defendant on notice of likelihood of injuries to one in the position of plaintiff.

That the plaintiff, while in the discharge of his duties as crossing watchman, would be injured by the actions of a drunken driver, violating five traffic statutes and ordinances, was not, in our opinion, such an occurrence as, under the evidence in this record, was reasonably foreseeable by defendant.

There was, accordingly, no duty imposed on defendant to anticipate such an occurrence as eventuated, and hence no negligence for failure to guard against it.

To abridge the statement of the court in *Orton* v. *Pennsylvania R. Co.*, 7 F. (2d), 36, at p. 38:

"The most that can be said for plaintiff is that defendant created a situation in which" the negligence of James Ball "operated to bring about the" injury. "Defendant's act was merely a condition and in no sense a concurring proximate cause of the injury."

We hold that the court prejudicially erred when it overruled defendant's motion for a directed verdict, made at the

conclusion of all the evidence, because there was a complete failure of proof to establish the negligence alleged in the petition, or any negligence of defendant which proximately caused, in whole or in part, the injuries to plaintiff. *Lavender, Admr.*, v. *Kurn et al., Trustees,* 327 U. S., 645, 90 L. Ed., 916, 66 S. Ct., 740, paragraph four of the syllabus.

Likewise, there was prejudicial error in overruling the motion of defendant for judgment notwithstanding the verdict, for the reasons above set forth.

It is next asserted that ''The trial court erred in overruling the separate motions of defendant to withdraw each specification of negligence'' contained in plaintiff's petition as heretofore set forth ''from the consideration of the jury at the close of all the evidence.''

Inasmuch as we have determined that there was a complete failure of proof to substantiate the allegations of negligence contained in the petition, or included therein under the pronouncements of the federal courts, we conclude that the motions to withdraw the specifications of negligence from the consideration of the jury, at the close of all the evidence, should have been sustained; and that the court prejudicially erred in overruling said motions.

Assignment of error No. 7 charged that ''The trial court erred in giving written instructions of law before argument requested by the plaintiff.''

Instruction 2 stated:

''* * * the defendant * * * owed a duty to its employee Carl C. Inman *to* use reasonable care to provide him with a reasonably safe place in which to work * * *.''

Instruction 4 provided:

''* * * that reasonable care is that degree of care which a reasonable man maintains in similar circumstances. The reasonable care which the defendant railroad owed to plaintiff * * * was that degree of care which a reasonably prudent person operating a railroad would use, having in mind the dangers of such an operation and the requirements of reasonably providing for the safety of the railroad's employees.''

It is urged that these instructions were prejudicially erroneous because they introduced an issue not raised by the

pleadings—viz., whether defendant exercised reasonable care to provide plaintiff with a reasonably-safe place to work.

The case of *Denny* v. *Montour Rd. Co., supra* (101 F. Supp., 735), paragraph 16 of the headnotes, makes appellant's contention in this respect untenable.

As to the other claims of appellant, concerning the special charges before argument requested by plaintiff and given by the court, we find them not to be well taken.

The next error assigned by appellant is, that "The trial court erred in refusing to give written instructions of law before argument requested by defendant."

The defendant requested the court to give defendant's written instructions 4, 5, 6, 7 and 8 before argument, which requests, as to all of said instructions, were refused by the court.

Each of those instructions contained a statement of a statutory traffic provision in the words of the statute, together with the following statement:

"* * * the court further says to you that, under the undisputed evidence of this case, the operator of the motor vehicle which came into collision with plaintiff violated this requirement of law and that defendant, in the exercise of ordinary care to provide plaintiff a reasonably safe place to work, was not required to anticipate or foresee such violation."

The violation of all of said statutes by Ball, the driver of the automobile which struck plaintiff, is not denied.

There is contained in this record no evidence of previous occurrences of like nature at this crossing, involving injury to a crossing watchman.

It is stated in 29 Ohio Jurisprudence, Negligence, Section 95:

"* * * It is a well-established rule that, in the absence of knowledge to the contrary, an individual to whom a duty is owed has a right to assume that it will be performed. This rule applies to duties arising by force of statutes or ordinances * * *."

*Henderson* v. *Cleveland Ry. Co.*, 123 Ohio St., 468, 175 N. E., 863, is cited as supporting authority.

All of the statutes in question were passed for the benefit of users of the public highways. to which class both plaintiff

and defendant belonged, and Ball owed to both plaintiff and defendant the duty to comply with the statutory provisions; and, in the absence of knowledge that Ball refused to comply with his statutory duties, both plaintiff and defendant had a right to assume that he would comply therewith.

As bearing upon the question of whether the defendant exercised ordinary care in providing the plaintiff with a reasonably safe place to work, it is our conclusion that, relating to the question of foreseeability, in connection with the subject of proximate cause, the five requests of defendant to charge before argument should have been given, and that the refusal to so charge constituted prejudicial error.

There was also prejudicial error because of the refusal of the court to include the contents of the requested charges before argument, or a correct statement of law on the subject matter of each, in its general charge, upon being requested so to do by defendant.

There was error in the charge of the court in stating that James Ball, the operator of the motor vehicle which struck plaintiff, was guilty of negligence as a matter of law, without instructing the jury of what that negligence consisted.

We further hold that the trial court prejudicially erred in overruling the defendant's motion for a new trial; that the verdict and the judgment entered thereon are not sustained by any probative evidence; and that the judgment is contrary to law.

As to the other errors assigned but not discussed herein, we hold none of them to have constituted prejudicial error.

The judgment is reversed, and this court will enter the judgment which the trial court should have entered. Final judgment in favor of defendant will be entered, at the costs of plaintiff.

*Judgment reversed.*

HUNSICKER, P. J., and DOYLE, J., concur.