Patrick H. SHEA, Plaintiff, Appellant,

v.

The NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY, Defendant, Appellee.

No. 6076.

United States Court of Appeals First Circuit.

May 8, 1963.

Bernard Kaplan, Malden, Mass., with whom Meyer, Lasch, Hankin & Poul, Philadelphia, Pa., was on the brief, for appellant.

William J. Noonan, with whom Noel W. Deering and David W. Walsh, Boston, Mass., were on the brief, for appellee.

Before WOODBURY, Chief Judge, and HARTIGAN and ALDRICH, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts directing a verdict for the defendant-appellee in an action under the Federal Employers' Liability Act, 45 U.S.C. § 51 et seq.

The events at issue took place on July 15, 1958. For a number of years prior to this date the defendant owned and maintained an auction room (for lost or damaged property) in a large shed surrounded by a fenced in parking area on Forsyth Street in Boston, Massachusetts. The entrance to the area was through a gate on Forsyth Street. A roadway ran parallel to railroad tracks to the left and to the rear of the parking area, which widened as one approached the auction room approximately 600 to 700 yards from the entrance. There was another gate at the rear of this area—behind the auction room. For some time prior to July 15, 1958 this gate had been kept locked on days on which the auctions were held.[1]

The testimony was to the effect that on auction days, patrons would begin arriving by motor vehicle about 9 a. m. and would gradually fill the area in front

---

1. Auctions were normally held each week on Tuesday at 10 a. m.

and to the rear of the auction room by 9:50 a. m. On the average auction day some 100 to 150 automobiles and trucks would be parked in the parking area.

On July 15, 1958 the plaintiff, who had been for some years employed as a railroad patrolman, was assigned to control traffic and supervise the parking of vehicles which had come into the area for the auction. This had been his assignment "off and on" for approximately four years.

Shortly after 9 a. m. the plaintiff observed the automobile of one Goldstein, which was parked unattended at the doorway to the auction room. Plaintiff had not observed this vehicle arriving but was familiar with it and knew that it belonged to Goldstein. Upon noticing this vehicle the plaintiff went into the auction room and asked Goldstein to move it into a parking space. Goldstein said that he would "be right out" and with that, plaintiff returned to his position of directing traffic. Goldstein followed the plaintiff from the auction room and proceeded to back his automobile into a parking area. However, in the course of backing the vehicle, Goldstein struck the plaintiff, causing a fracture of plaintiff's left leg.

The entire thrust of plaintiff's claim that defendant was negligent resides in his contention that the defendant should have had additional patrolmen directing traffic at the auction site, and in the logical corollary of this position—that additional personnel might have prevented the plaintiff being struck by Goldstein's automobile.

■ At the close of the plaintiff's case, the defendant filed a motion for a directed verdict, which was allowed by the district judge on the ground that there was insufficient evidence to warrant a finding that defendant was negligent or that any acts or omissions of the defendant caused the plaintiff's injuries.

In a memorandum in support of the order allowing the motion, the court found that no standard of care was established; that there was no causal connection shown between the absence of additional patrolmen (directing traffic) and the plaintiff's injury; that it was sheer speculation that the presence of additional traffic officers would have prevented the injury to the plaintiff, and that the plaintiff's injury was caused solely by the concurrence of his own negligence and that of Goldstein.

We believe that the action of the district judge was proper and that plaintiff did not present sufficient evidence to take the case to the jury.

■ As the Supreme Court has stated: "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed. 2d 493 (1957).

■ While it is true that in applying this statutory standard, the Supreme Court has allowed juries a liberal latitude in deciding whether particular facts make out employer negligence, e. g., Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 77 S.Ct. 457, 1 L.Ed.2d 511 (1957), nonetheless, other opinions of the Court clearly indicate that there must still be a judicial appraisal as to the sufficiency of evidence to support a jury verdict. See, e. g., Inman v. Baltimore & Ohio R. Co., 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959); Herdman v. Pennsylvania R. Co., 352 U.S. 518, 77 S.Ct. 455, 1 L.Ed.2d 508 (1957).

Inman v. Baltimore & Ohio R. Co., supra, is particularly apposite. There the petitioner, who had been employed as a railroad crossing watchman for some seven years, brought an action under the Federal Employers' Liability Act after being struck by a passing motorist while on the job. Petitioner's job involved a host of specific duties in addition to that of controlling vehicular traffic—and it was his contention that these manifold duties created a likelihood of his being struck by automobiles at the

intersection and that the railroad "was negligent in failing to use ordinary care to provide * * * a reasonable safe place to work" at the crossing.

In upholding a decision of the Court of Appeals of Ohio which set aside a jury verdict for the petitioner, 108 Ohio App. 124, 161 N.E.2d 60, the Supreme Court stated that: "The Act (FELA) does not make the employer an insurer" * * * and that "The burden of proving that the crossing was an unsafe place to work was on petitioner."

In the instant case we cannot "with reason" state that plaintiff has carried this burden. Plaintiff has failed to show the need of another patrolman; has failed to show what his duties would be; has failed to show where in the parking area he would be stationed; and has failed to show that if there were two patrolmen assigned to direct traffic, the additional officer would likely have been in a position to warn the plaintiff of the backing of the Goldstein car. Moreover, the plaintiff knew that Goldstein was going to repark his car and, therefore did not require any warning from anybody.

In short, we believe that there is a complete absence of any showing that the procedure which the defendant followed in providing for traffic control at the auction site failed to satisfy a reasonable standard in the light of the hazards to its patrolman which it could reasonably expect. Webb v. Illinois Central R. Co., 352 U.S. 512, 516, 77 S.Ct. 451, 1 L.Ed. 2d 503 (1957).

■ Plaintiff did attempt to show that on two occasions he had requested additional help and that his requests were denied. This evidence was excluded by the trial judge and the exclusion is cited here as prejudicial error. We believe that the trial judge was within his discretion in excluding the evidence. There was no showing that traffic conditions at the time of plaintiff's requests were the same as those which obtained on the day of the accident. For one thing, on the day of the acci-

dent the gate at the rear of the situs was closed. If both gates were opened and there were dual ways of entrance and exit to the site, a request for additional assistance might take on an added significance. However, more fundamentally, in those cases in which courts have attached some significance to prior employee complaints, the request for help if granted would have directly and immediately ameliorated the situation which gave rise to the injuries there at issue. Cf., Blair v. Baltimore & O. R. Co., 323 U.S. 600, 65 S.Ct. 545, 89 L.Ed. 490 (1944). In the instant case, the logical import of granting a request for additional help—*vis a vis* the injury herein sustained—would be so conjectural as to amount to but a guess in the dark.

Judgment will be entered affirming the judgment of the district court.