George O. **ALDRIDGE** and Daisy M. Aldridge, Appellees,

v.

**BALTIMORE AND OHIO RAILROAD COMPANY,** a body corporate, Appellant,

v.

Keith D. **BRELSFORD** and Erie Insurance Exchange, Defendants.

No. 84–1185.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1986.

Decided March 25, 1987.

George F. Pappas, Baltimore, Md. (H. Russell Smouse; Melnicove, Kaufman, Weiner & Smouse, P.A.; C. Keith Meiser, Baltimore, Md., on brief), for appellant.

Richard R. Beauchemin, Baltimore, Md. (Norris W. Tingle, Geoffrey J.C. Boyd; Arnold, Beauchemin & Tingle, P.A., Baltimore, Md., on brief), for appellees.

Before RUSSELL, WIDENER, HALL, PHILLIPS, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, sitting en banc.

SPROUSE, Circuit Judge:

The Baltimore & Ohio Railroad Company appeals from a judgment entered against it after a jury verdict in the sum of $196,800 in favor of George Aldridge in this Federal Employers' Liability Act (FELA) suit. 45

U.S.C. §§ 51–60 (1982). Aldridge, a railroad crossing guard employed by the Railroad Company, was struck by an intoxicated motorist who deliberately crossed in front of a railroad engine partially blocking a crossing in Cumberland, Maryland. After a judgment on a jury verdict in his favor, the Railroad appealed to this court raising numerous grounds for reversal, including its principal contentions that it was not negligent, and that the district court erred by refusing to instruct the jury that they must reduce Aldridge's damages to their present value, even in the absence of any trial evidence of present value.

A panel of this court affirmed the judgment of the district court. *Aldridge v. Baltimore & Ohio Railroad Co.*, 789 F.2d 1061 (4th Cir.1986) We granted the Railroad's petition for rehearing *en banc* and now, after rehearing, again affirm. A majority of the *en banc* court, consisting of Judges Phillips, Sprouse, Ervin, Wilkinson, and Wilkins affirm the district court's ruling that the jury's finding of negligence on the part of the Railroad was sufficiently supported by the evidence. Judges Russell, Widener, Hall, and Chapman voted to reverse that holding. A majority of the *en banc* court consisting of Judges Hall, Phillips, Sprouse, Wilkinson, and Wilkins voted under the circumstances of this case to affirm the district court's refusal to instruct the jury to reduce Aldridge's damages to present value. Judges Hall, Sprouse, Wilkinson, and Wilkins would affirm this holding on the reasoning of the original panel opinion. Judge Phillips concurs in this result for the reasons stated in his concurring opinion.

The judgment of the district court is, therefore, affirmed.

AFFIRMED.

PHILLIPS, Circuit Judge, concurring specially:

I concur in the result reached by the majority which affirms both as to liability and damages.

I write specially on the damages issue because I believe that the district court erred in declining to instruct the jury that it should award only the present value of lost future earnings, but I would hold that this error was harmless under the circumstances.

The Supreme Court has recently reiterated the long-standing rule that defendants in FELA cases are "entitled," upon request, to such a jury instruction.[1] *St. Louis Southwestern Railway Co. v. Dickerson*, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985) (per curiam). But the Court has not spoken to the related but independent question of which party has the burden of proof with respect to factors that would either decrease or increase the gross amount of lost earnings to reflect their present value. This, in fact, is the issue that has mainly divided the lower federal courts on the general matter. *Cf. e.g. Alma v. Manufacturers Hanover Trust Co.*, 684 F.2d 622 (9th Cir.1982) (burden on defendant); *DiSabatino v. National Railroad Passenger Corp.*, 724 F.2d 394 (3d Cir.1984) (burden on plaintiff). This circuit has not decided that issue and it is therefore an open one with us. Because I believe that its resolution actually controls the nature of a party's entitlement to the instruction requested but not given here, I think we should decide it now.

On that open question, I would hold that each party has the burden with respect to factors that tend to favor its respective position: the plaintiff to prove that present value is more than total lost earnings, the defendant that it is less. This, rather than a rule that places the burden to establish present value exclusively on one or the other party seems to me both the most practical and the most conceptually sound basis for allocating the burden of proof on the issue. *See generally* F. James & G. Hazard *Civil Procedure*, § 7.8 (2d ed. 1977).

---

1. This jury instruction rule is in turn based upon the underlying "substantive-remedial" rule that, in conformity with the general "lump sum compensatory award" approach of federal law, the measure of compensability for a lost stream of expected income is necessarily its present value. *See Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 533, 103 S.Ct. 2541, 2548, 76 L.Ed.2d 768 (1983).

From this would necessarily flow the corollary rule that a party producing legally sufficient evidence on the issue is entitled to a jury instruction that adequately indicates to the jury how the evidence could be used to convert to present value, either up or down. In particular cases, of course, both sides might produce specific evidence (of inflation or deflation, interest trends, etc.) favorable to their positions. In such cases, each side would be entitled to specific instructions as to how its evidence if accepted might be used to adjust lost earning totals to present value.

On the other hand, failure to produce any specific evidence on the issue should have the normal effect of disentitling a party to any *specific* instruction on the issue. In some cases, this might require instructions specifically favorable to only one of the parties, where only that party produced evidence on the issue. In others, it might disentitle both parties to any specific instructions on the method of converting to present value. In the latter situation, however, both parties would still be entitled, upon request, to a general instruction that in computing any amount due for lost earnings the award should be for present value.[2] That is what *Dickerson* seems to me unmistakably to hold, but I think that is all it holds. The fact that the *Dickerson* court referred only to defendant's entitlement simply reflects the fact that it was the defendant in that case (as normally it would be) who objected to the failure to give any instruction on the issue.

Where the only entitlement is to such a general instruction, i.e., where neither party has introduced specific evidence on the issue, it is hard to see how the failure to give even a general instruction could be treated as prejudicial. Where a party has produced no specific evidence of factors affecting present value computation, the lack of *any* instruction on the present value issue would seem necessarily harmless error as to that party.

So I would hold here. In faithfulness to *Dickerson*'s most recent recognition of a right in the defendant to have the jury generally instructed to award only present value, it was error here to refuse such an instruction. But where, as here, defendant produced no specific evidence as to how, favorably to it, this should be done, the error is necessarily harmless.

CHAPMAN, Circuit Judge, dissenting:

### I.

Concurring in the judgment in *Inman v. Baltimore & Ohio Railroad Company*, 361 U.S. 138, 142, 80 S.Ct. 242, 244, 4 L.Ed.2d 198 (1959), Justice Whittaker stated:

> Reduced to substance, the simple facts are that petitioner, a crossing flagman, while standing in a well-lighted intersection alongside a passing train in the nighttime and swinging a lighted red lantern in each hand, was struck, knocked down and run over by a drunken driver. What, I ask, did respondent do or omit that caused or contributed to cause that casualty? How could it have prevented the casualty? Petitioner says that respondent failed to provide him with "enough protection." About the only way, as I perceive, that respondent could protect its crossing flagmen against injury from such lawless conduct by third persons would be to provide them with military tanks and make sure they stay in them while within or moving about crossing-intersections in the performance of their duties—and I am not even sure that this method, though ironclad, would be certain protection to a flagman against lawless injury by third persons,

---

2. In many cases opposing counsel undoubtedly tacitly agree not to introduce any specific present value evidence, mutually accepting that it would simply wash out or be offset by conflicting evidence, or would create more of a risk of damaging confusion than likelihood of benefit. Some courts have indeed adopted a "total offset" approach to avoid or minimize the difficult evidentiary problems that the underlying damages rule inevitably creates. *See Pfeifer*, 462 U.S. at 544–46, 103 S.Ct. at 2554–55. Certainly it should be possible under the federal rule for the parties formally to avoid, by stipulation, any need for or entitlement to even a general present value instruction.

for someone might shoot him, an act not very different, it seems to me, from the drunken driver's conduct which injured petitioner in this case, and for which injuries he insists, and four members of this Court agree, a jury should be permitted to require respondent to pay damages. How this can be thought to square with any known concept of "negligence" by respondent is beyond me.

Although not employing as colorful an analogy, the majority in *Inman* held that the conclusion could not reasonably be drawn that "negligence of the employer played any part at all in the injury...." *Id.* at 140, 80 S.Ct. at 243.

It is undoubtedly true that the insistent locomotion of judicial interpretation has over time rendered the railroad employer liable for injuries incurred by his employees in which the employer's "negligence played any part, even the slightest." *Rogers v. Missouri Pacific Railroad Company*, 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493 (1956). The Act does not make the employer an insurer, however. *Inman, supra*, at 140, 80 S.Ct. at 243. That the harm complained of was reasonably foreseeable is still "an essential ingredient of Federal Employers' Liability Act negligence." *Gallick v. Baltimore & Ohio Railroad Company*, 372 U.S. 108, 117, 83 S.Ct. 659, 665, 9 L.Ed.2d 618 (1962).

The panel opinion states that, because "it should be easily foreseeable that many motorists, inebriated or not, might be unduly excited or frustrated because of real or imagined intrusions upon their rights to use the common streets and highways," it was reasonably foreseeable that the train's partial blockage of the railroad crossing would have "incited some senseless motorist to take reckless action." I believe that the panel has misapplied the standard defining reasonable foreseeability.

Because there was testimony that motorists had upon occasion illegally crossed in front of a train partially blocking an intersection, a conclusion that the railroad could reasonably foresee that event re-occurring is correct. That occurrence, however, was not what happened in this case. The de-

fendant railroad, presumably in light of its experience regarding illegal railway crossings, had posted the crossing watchman Aldridge across the unoccupied opening. Aldridge's function was, by virtue of his position and his lights, which he carried in each hand, to preclude any re-occurrences of the illegal crossings. That precaution duly taken, the event that a drunken motorist would thereupon drive his car illegally through the "opening," thus running over the positioned watchman, was of a kind not previously experienced. "There was 'no evidence of prior occurrences of the kind here under consideration' in the record." *Inman, supra*, at 141, 80 S.Ct. at 244, *quoting Inman v. Baltimore & Ohio Railroad Co.*, 108 Ohio App. 124, 131, 161 N.E.2d 60, 66 (1958). Absent any such evidence, the jury was unable as a matter of law to find that the railroad could have reasonably foreseen the motorist's criminal action. The reasonable foreseeability of the harm, an "essential ingredient" of negligence in an FELA action, is unproved. *Gallick, supra*, 372 U.S. at 117, 83 S.Ct. at 665.

The unintended effect of the panel's misapplication of the reasonably foreseeable standard is to render nugatory this "essential ingredient" of negligence. The foreseeability test, as applied by the panel, would adjudge the re-occurrence of an illegal crossing foreseeable even where a "senseless" driver disregarded precautions adopted after the prior occurrences. Because the panel's foreseeability standard does not focus on the foreseeability of re-occurrence in light of the safety precautions adopted, but rather ignores them, the standard knows no bounds: even if, to borrow Justice Whittaker's analogy, the watchman were encased in an armored tank, his being struck by a drunken motorist is foreseeable simply because other motorists, presumably sober but impatient, drove across open track absent a watchman blocking their path. Indeed, under the panel's broad test of foreseeability, the "essential ingredient" can likely be presumed, as a plaintiff can simply point to the fact that an employer had taken a precaution

against a certain harm to show that he reasonably foresaw that harm re-occurring.

Against the danger of illegal crossings, the railroad interposed a watchman. Against the danger of his being accidentally run over, the railroad gave him lights. Regarding the danger that a drunken driver might ignore both and wilfully run down the watchman, the occurrence was unforeseen. The lonely fact that automobiles had steered around stopped trains and crossed open tracks in the past does not tend to prove that they will do so again in an accelerating automobile in wilful disregard of the value of human life. The issue of negligence should not have gone to the jury.

## II.

It is a fundamental rule of law that a plaintiff is entitled only to his provable damages, and no more. Where a plaintiff seeks damages for a value which would have accrued in the future, *e.g.*, lost future wages, and he seeks to acquire that future value presently, then it is a matter of common sense that the future value should be reduced to its present value in order to account for the time value of money. It is this present value which reflects the full damages suffered by the plaintiff, and consequently fully remedies his loss. To permit the plaintiff to acquire a greater value for loss of future wages, above his proved amount, constitutes an unjust enrichment, and should not be sanctioned by law.

It is also a fundamental feature of our legal system that the defendant is not required to produce evidence. The burden of proving injury, negligence, causation, and damages is on the plaintiff, and his failure to do so adequately, even in the absence of any rejoinder by the defendant, entitles the defendant to judgment.

The Supreme Court recently stated that it is "clear" that "a defendant in an FELA case is entitled to have the jury instructed that 'when future payments or other pecuniary benefits are to be anticipated, the verdict should be made up on the basis of their present value only.'" *St. Louis Southwestern Railway Company v. Dick-*erson, 470 U.S. 409, 411, 105 S.Ct. 1347, 1348, 84 L.Ed.2d 303 (1985) (per curiam), *quoting Chesapeake & Ohio Railroad Company v. Kelly*, 241 U.S. 485, 491, 36 S.Ct. 630, 632, 60 L.Ed. 1117 (1916). In the case presented, the defendant requested during trial an instruction regarding the need to reduce damages to present value, which request the district court found sufficient to preclude a waiver of the issue. Thus, it seems self-evident that the defendant was entitled to a present value instruction. Although the panel opinion agrees with this proposition, it holds that the defendant is not "entitled" to such an instruction unless he has carried his newly imposed burden to lay the necessary evidentiary foundation for the instruction. I believe this imposition has the effect of restricting this entitlement in a manner not sanctioned by the Supreme Court.

*Dickerson, supra,* involved a case where the plaintiff had presented evidence of his future wage loss. The defendant requested that the judge submit an instruction to the jury to the effect that the jury should reduce the award for lost wages to its present value. It does not appear from the opinion that the defendant produced any evidence on which to base the instruction. The Supreme Court held that, although "no single method for determining present value is mandated by federal law and that the method of calculating present value should take into account inflation and other sources of wage increases as well as the rate of interest, it is equally clear that an utter failure to instruct the jury that present value is the proper measure of a damage award is error." *Id.* 470 U.S. at 412, 105 S.Ct. at 1349. The Supreme Court reversed on this failure. Similarly, in *Jones & Laughlin Steel Corporation v. Pfeifer*, 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), neither party had offered any expert testimony concerning predicted future rates of inflation, interest rates, or their connection. The Supreme Court stated that, "whatever the rate the District Court may choose to discount the estimated stream of future earnings, it must make a deliberate choice...." *Id.* at

552–553, 103 S.Ct. at 2558. Thus the Supreme Court remanded the case to the district court on this issue.

Although the Supreme Court has clearly given lower federal courts latitude in determining by what method they choose to discount awards of future wages to present value, including permitting courts to adopt the "total offset" method, and permitting litigants to stipulate that present value will not be requested, it does not seem that the Supreme Court has ever wavered from its requirement that the defendant is entitled to a present value instruction. The Supreme Court has held steadfastly to its principle that the defendant is entitled to a present value instruction lest the damages be comprised of " 'more than compensation if it be made up by aggregating the benefits without taking account of the earning power of the money that is presently to be awarded.' " *Dickerson* 470 U.S. at 412, 105 S.Ct. at 1349, *quoting Kelly* 241 U.S. at 491, 36 S.Ct. at 632. Where the parties have failed to introduce evidence of the proper measure of present value, and the defendant has been denied his entitlement to an instruction, the Supreme Court has reversed the judgment. *Pfeifer.*

The principle established by the panel is beguilingly attractive. Clearly a great deal of law can be explained by the proposition that each litigating party should have the burden of proving facts or theories which serve his interest. This principle, however, is but one of many, and must in this instance be considered in light of the less comely, but perhaps better established principle that the plaintiff is entitled to his actual losses, and no more. This latter principle may fail to produce the elegant result, but will serve to respect the prerogative of the defendant to decline to produce evidence, and will furthermore respect the integrity of the judicial system in its difficult task of finding a proper award of damages for loss of future wages. The defendant should not have to carry the burden of laying the evidentiary basis for a present value instruction. I respectfully dissent.

I am authorized to say that Judge RUSSELL and Judge WIDENER join this dissent; Judge HALL joins in Part I and Judge ERVIN joins in Part II of the dissent.