## INMAN *v.* BALTIMORE & OHIO RAILROAD CO.

No. 36. Argued November .12, 1959.—Decided December 14, 1959.

*Raymond J. McGowan* argued the cause and filed a brief for petitioner.

*William A. Kelly* argued the cause for respondent. On the brief were *C. G. Roetzel* and *John L. Rogers, Jr.*

Mr. Justice Clark delivered the opinion of the Court.

Petitioner brought this action under the Federal Employers' Liability Act, 35 Stat. 65, 45 U. S. C. § 51, for personal injuries sustained in the course of his employment. Petitioner for some seven years had been a railroad crossing watchman for respondent at "Bettes Corners" in Akron, Ohio. He filed suit claiming damages for an injury he received when an intoxicated automobile driver ran into him one midnight while he was on duty flagging traffic for a passing train. Bettes Corners is a heavily traveled vehicular intersection where Tallmadge Avenue, running east and west, is intersected by Home Avenue, which runs northeast and southwest. Three sets of railroad tracks cut diagonally across the intersection in a northwest-southeast direction. The driver of the automobile, heading northeast on Home Avenue, was turning

left into Tallmadge Avenue when the accident occurred. Petitioner claims that the railroad "was negligent in failing to use ordinary care to provide . . . a reasonable safe place to work" at the crossing. He says that his duties— including the flagging of traffic, maintenance of a lookout for other trains, and the reporting of hotboxes on the passing ones—required him to face the train tracks and created a likelihood of his being struck by automobiles at the intersection.

The evidence of the manifold duties of petitioner is clear. The evidence of his exposure to injury by traffic includes the layout of Bettes Corners, the cut of the railroad tracks across it, and the duties petitioner was required to perform. Petitioner says that the layout of the crossing was hazardous for one performing the duties assigned to him. In support of this, he points to the answer of one witness as to the action of the car which struck him. This witness stated that, "like a lot of them I seen there, jumping the gun" at the crossing, the driver of this car, on seeing the tail light of the train approaching, drove around the line of cars on the street adjacent to the train and, as he was turning left onto the other street, hit petitioner, who was standing near the passing train and flagging the traffic. There is no claim that the intersection was dark or that the regular railroad crossing warning, lights, bells, etc., were not properly working at the time. Nor is it disputed that the petitioner was waving a lighted lantern in each hand. Likewise the intoxicated condition of the driver is not in controversy, nor is the fact that he passed through a traffic stop sign immediately before hitting petitioner and violated other local traffic safety measures designed to protect persons from injury at the crossing.

The trial court submitted the issue of negligence to the jury, which found the railroad negligent "in part" because it failed to afford "enough protection." Judgment for

petitioner was entered on the verdict for $25,000. The Court of Appeals of Ohio reversed, finding that "there was a complete failure of proof to establish the negligence." It said that it was not "reasonably foreseeable" that petitioner "would be injured by the actions of a drunken driver, violating five traffic statutes . . . ." 108 Ohio App. 124, 131, 161 N. E. 2d 60, 66. After the Supreme Court of Ohio dismissed the appeal, 168 Ohio St. 335, 154 N. E. 2d 442, we granted certiorari, 359 U. S. 958.

In *Rogers v. Missouri Pacific R. Co.,* 352 U. S. 500 (1957), we laid down the rule that "[j]udicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death." *Id.,* at 506–507. In measuring Ohio's disposition of the case here by the *Rogers* yardstick, we must affirm. The Act does not make the employer an insurer. Here petitioner had been working at Bettes Corners for seven years, performing these same duties under like circumstances and, for some three years, on this identical midnight shift. No accidents had occurred during that long period. In light of this background, we believe that the evidence here was so thin that, on a judicial appraisal, the conclusion must be drawn that negligence on the part of the railroad could have played no part in petitioner's injury.

The contention of petitioner is that the witness' remark, "like a lot of them I seen there, jumping the gun," was testimony of other occurrences at the crossing similar to the one here involved. The burden of proving that the crossing was an unsafe place to work was on petitioner. It depended on some type of testimony showing the hazards at the crossing. There is no evidence of complaint to the railroad, nor is there other testimony of similar occurrences in the record. In mak-

ing the judicial appraisal of this tenuous proof, Ohio's Court of Appeals held it not sufficient. It found that there was "no evidence of prior occurrences of the kind here under consideration." in the record. Indeed, unless these 11 words of the witness can be said with reason to be sufficient, there is none. Under such circumstances, they are too slender a reed for us to say that the decision of Ohio's court is erroneous.

We therefore conclude, in light of these considerations, that the judgment must be

*Affirmed.*

MR. JUSTICE FRANKFURTER.

The opinion of my Brother CLARK demonstrates, insofar as demonstration is possible in law, that this case should never have been brought here. In accordance with the views that I expressed in *Rogers* v. *Missouri Pacific R. Co.*, 352 U. S. 500, 524 (1957), and in which I have since persisted, the appropriate disposition would be dismissal of the writ of certiorari as improvidently granted. If these views were enforced under the special circumstances of this case, affirmance by an equally divided Court would result. Thereby this case would be cast into the limbo of unexplained adjudications, and the lower courts, as well as the profession, would be deprived of knowing the circumstances of this litigation and the basis of our disposition of it. Since I have registered my conviction on what I believe to be the proper disposition of the case, it is not undue compromise with principle for me to join Brother CLARK's opinion in order to make possible a Court opinion.

MR. JUSTICE WHITTAKER, concurring.

I heartily join the Court's opinion. But I derive no pleasure from implying, contrary to the views of my Brothers in the minority, that there was such complete want of evidence of negligence by respondent that "rea-

sonable men" could not differ about it, for, at the very least, I regard my Brothers who dissent as reasonable men.

Notwithstanding this, it seems to me that the facts of this case make it crystal clear that the Court's opinion lacks not a whit in fully comporting with the standards of care of the mythical "reasonable man," for, like the Ohio Court of Appeals, I simply cannot see any substantial evidence—or even a scintilla or an iota of evidence—of negligence on the part of respondent that caused, or directly contributed in any degree to cause, petitioner's unfortunate injury.

Reduced to substance, the simple facts are that petitioner, a crossing flagman, while standing in a well-lighted intersection alongside a passing train in the nighttime and swinging a lighted red lantern in each hand, was struck, knocked down and run over by a drunken driver. What, I ask, did respondent do or omit that caused or contributed to cause that casualty? How could it have prevented the casualty? Petitioner says that respondent failed to provide him with "enough protection." About the only way, as I perceive, that respondent could protect its crossing flagmen against injury from such lawless conduct by third persons would be to provide them with military tanks and make sure they stay in them while within or moving about crossing-intersections in the performance of their duties—and I am not even sure that this method, though ironclad, would be certain protection to a flagman against lawless injury by third persons, for someone might shoot him, an act not very different, it seems to me, from the drunken driver's conduct which injured petitioner in this case, and for which injuries he insists, and four members of this Court agree, a jury should be permitted to require respondent to pay damages. How this can be thought to square with any known concept of "negligence" by respondent is beyond me.

Mr. Justice Douglas, with whom The Chief Justice, Mr. Justice Black and Mr. Justice Brennan concur, dissenting.

Petitioner, a nighttime crossing watchman stationed at respondent's railroad intersection, was seriously injured about midnight when an automobile driven by an intoxicated person ran into him from behind while he was flagging traffic for a passing train. The jury found on a special interrogatory that respondent was negligent in not providing "enough protection."

The crossing is at Tallmadge and Home Avenues. Tallmadge runs east and west; Home, northeast and southwest. Three of respondent's tracks, running northwest and southeast, extend through the intersection of these two streets, and its trains move over the parallel tracks in opposite directions and often near the same time.

There was evidence that at the approach of a train petitioner had duties of the following character: (1) He was supposed to flag highway traffic moving in four directions to a stop, using lanterns and a whistle provided for that purpose. (2) If a second train was to pass at or about the time of another, he had to look for it before clearing the highway traffic. (3) He was to look for hotboxes on all passing trains and signal the conductor if he discovered any. (4) If a train was going east, he was to stand on the west side of the tracks the better to see trains coming from the west.

On the night in question petitioner received a signal that an eastbound train was approaching. Accordingly, he stationed himself a few feet west of the tracks, blowing the whistle and swinging the red lantern first toward Tallmadge Avenue traffic and then toward Home Avenue traffic. Then he stationed himself facing the tracks, his back to Tallmadge Avenue traffic.

Although respondent's tracks intersect Tallmadge and Home Avenues where those two streets cross, it is pos-

sible for a car going north on Home to make a left turn into Tallmadge even while a train is passing. There is, however, a stop sign on Home; and petitioner rightfully had halted all highway traffic. Nevertheless an intoxicated driver came through the stop sign on Home and made a squealing left turn into Tallmadge, hitting petitioner and injuring him.

There was evidence that at the time of the accident (1) the caboose of the passing train was just making the crossing; (2) the railroad block signal could not be seen from where petitioner stood; (3) another train from the opposite direction on the adjoining track was due to reach the crossing at any moment and petitioner was looking for its headlight; (4) petitioner remained standing with his back to the highway traffic as he was obliged to do if he performed these manifold duties; (5) this traffic was heavy in both streets; (6) on prior occasions cars had "jumped the gun" at this same intersection.

It may be that if the duty of the petitioner had been restricted to stopping traffic on the approach of a train and waving it on when the train had passed, there would be on this record (unlike that in *Cahill* v. *New York, N. H. & H. R. Co.*, 351 U. S. 183)[1] no evidence of negligence on respondent's part. Petitioner's duties were much broader, as I have indicated. Yet the Court holds there was no jury question as to whether the place chosen for the performance of those several duties was a reasonably safe one in light of all the circumstances, including the volume of traffic at that intersection. Plainly respondent is not an insurer. It is under no duty to remove all possibilities of injury to its employees or to make, at any cost, the place of work as safe as one's living room. But whether a particular hazard is of sufficient weight and moment to induce a reasonable person to guard against it and whether that

---

[1] For the opinion below see 224 F. 2d 637.

danger could be removed or diminished by safety measures reasonably available are matters for the jury to determine. The jury might find that the assignment of part of petitioner's duties to someone else or the installation of mechanical devices to stop traffic would have been undertaken by a reasonable person under the circumstances. It is not clear beyond argument of reasonable men that the respondent could not have foreseen an injury to petitioner by a reckless motorist or that it took every precaution 'that reasonableness under the circumstances required.

The nature of this congested crossing with three sets of railroad tracks cutting diagonally across its four corners and the multiple duties required of petitioner at this hour of the night, were sufficient in my view for a jury to find that petitioner was too busy to protect himself from the vehicular traffic and that the employer did not use reasonable care in furnishing him with a safe place to work, as required by the Act. *Bailey* v. *Central Vermont R. Co.,* 319 U. S. 350. The very close division in this Court on that issue reinforces my conclusion.

There is no reason why a negligent actor should be insulated from the consequences of his negligence merely because a third party's reckless or criminal act was the immediate cause of the injury. On the contrary, we have unanimously held that the fact that the danger to the employee under the Act lies in intentional or criminal conduct of third parties is not determinative. If foreseeable, there is a duty to make reasonable provisions against such events. *Lillie* v. *Thompson,* 332 U. S. 459. The instructions on this point seem to me to be adequate.[2] The

---

[2] "After an accident has happened it is usually easy to see how it could have been avoided but negligence is not a matter to be judged after an occurrence. It is always a question of what reasonably prudent persons under like or similar circumstances would or should have anticipated in the exercise of ordinary care. Where

Court appears to place great stress on the lack of evidence of prior accidents at this intersection and the fact that petitioner worked there for seven years before being hit by an automobile. But certainly the duty to make a reasonable effort to provide a safe place of work is not conditioned upon an employee's first being injured or killed. Moreover, the liability of the railroad under the Act attaches even though the injury was caused only "in part" by its negligence. Such is the command of § 1 of the Act, as repeatedly applied. See *Rogers* v. *Missouri Pacific R. Co.,* 352 U. S. 500, 506–507; *Cahill* v. *New York, N. H. & H. R. Co., supra.*

Though I think affirmance of the judgment is error, I am happy that we have a full Court turning its attention to an important question of law—whether trial by jury, guaranteed by the Seventh Amendment and an integral part of the remedy provided by Congress under this Act, has been honored by the courts. Moreover, as my Brother FRANKFURTER points out, affirmance of the judgment below by an equally divided Court would deprive the decision of all precedential value, so important in this as in other fields. Furthermore, the withdrawal of a Justice from a decision on the merits after certiorari has been granted impairs the integrity of the practice of allowing the vote of four Justices to bring up any case on certiorari.[3] Participation by the whole Court at least in some of these cases (cf. *Reynolds* v. *Atlantic Coast Line R. Co.,* 336 U. S. 207, 209) is partial performance of our pledge to Congress.

---

there is no danger reasonably to be anticipated or apprehended, there is no duty to guard against something that in the minds of reasonable men does not exist. However, if such expectation carries a realization that a given set of circumstances is suggestive of danger, then failure to take appropriate safety measures constitutes negligence."

[3] See the legislative history in *Harris* v. *Pennsylvania R. Co., ante,* p. 15, at p. 18, note 2 (concurring opinion).