**Alice W. BRADFORD, Appellant,**

**v.**

**MUTUAL BENEFIT HEALTH AND AC-
CIDENT ASSOCIATION, a
corporation, Appellee.**

**No. 2489.**

Municipal Court of Appeals for the
District of Columbia.

Argued Dec. 21, 1959.

Decided April 7, 1960.

I. Irwin Bolotin, Washington, D. C., with
whom Milton Dunn, Washington, D. C.,
was on the brief, for appellant.

John J. Leahy, Washington, D. C., for
appellee.

Before ROVER, Chief Judge, and
HOOD and QUINN, Associate Judges.

QUINN, Associate Judge.

Appellant brought suit on an insurance
contract written by appellee. A verdict
was directed against her and this appeal
followed.

The contract between the parties was
dated June 18, 1952, and the insuring clause
provided that appellee

"[h]ereby insures the person whose
name is shown in the Schedule on the
last page hereof (herein called the In-
sured), subject to the provisions and
limitations of this policy, against loss
of life, limb or sight occurring while
this policy is in force and resulting di-
rectly, and independently of all other
causes, from such injuries, or against
loss of time beginning while this policy
is in force and caused by such injuries
or such sickness * * *:

"(a) the term, such injuries, as used
in this policy, shall mean accidental
bodily injuries received while this
policy is in force * * *."

Under the section entitled "Accident Bene-
fits" the policy further stated:

"If the Insured, because of such in-
juries, shall be totally and continuously
disabled and shall suffer total loss of
time, the Association will pay benefits
for one day or more (benefits begin on
the date of the first medical treatment
during disability) during the period of
such disability at the rate of One
Hundred and Fifty ($150.00) Dollars
per month * * *."

Appellant originally filed this action in
the United States District Court. Her
amended complaint alleged that she was
injured on July 20, 1952, and was forced to
retire from the United States Government.
Although she did not specifically allege that
her retirement resulted from the injury,
that obviously was her claim. Judgment
was demanded for $7,200 ($150 monthly
from July 1952 to July 1956) and for an
additional $150 a month beginning in Au-

gust 1956. After pretrial proceedings, the case was certified to the Municipal Court.[1]

We have carefully studied the voluminous transcript and find that the principal dispute concerns the meaning of the evidence, not an interpretation of the policy. There are seven assignments of error which may be summarized under three main points: (1) The trial court erred in directing a verdict at the close of appellant's case because factual questions and disputes were present which should have been submitted to the jury; (2) In determining whether factual issues were present, the trial court failed to consider appellant's evidence in a light most favorable to her; and (3) The trial court erred in failing to hold that appellee had knowledge of appellant's true physical condition and employment status at the time the contract was executed.

The last assignment of error requires comment. As the complaint and evidence show, the gist of appellant's claim is for loss of time resulting from injury, not sickness as such. Accordingly, that error goes not to a claim under the contract for benefits because of sickness but rather it is directed at appellee's effort to rescind the contract because of appellant's alleged misrepresentations, thus precluding recovery. However, due to our disposition of the case, it is unnecessary to reach this question.

■■ Concerning the second error, we will assume for this appeal that appellant is correct. Certainly, a party against whom a verdict is directed is entitled to every reasonable and favorable intendment of the evidence.[2] Moreover, we are not unmindful of recent admonitions by the Supreme Court concerning, generally, jury ques-

tions.[3] But no federal statute is involved here, nor was the jury's verdict set aside. Therefore, the question presented is whether sufficient evidence, with all inferences which might reasonably have been drawn therefrom, was present to support a jury finding for appellant. If not, the court properly directed the verdict.[4] This, in turn, brings us to the first assignment of error and to the facts.

For the sake of clarity, the evidence presented will be set out in chronological sequence. In 1931 appellant began her employment as a statistician with the Department of Commerce. Shortly thereafter, she became a patient of Dr. Henry G. Hadley and received treatment for anemia and minor ailments. Appellant was granted sick leave on October 5, 1951, because of anemia and was hospitalized for a week. She then obtained annual leave through November 29, 1951, and left with her husband for a Florida vacation on October 19. The next day she was injured on a train in Miami, sustaining a sprained wrist, finger and ankle, as well as "whiplash" injuries to the neck. She testified that extreme nervousness commenced at that time. Furthermore, appellant stated that muscles and ligaments were "pulled and torn and twisted" in her back. At the expiration of her annual leave on November 29, she was granted a leave-without-pay status, to continue until she was able to return to work.

Appellant was, therefore, not actually working, nor had she been for approximately nine months, when she applied for the insurance contract. The application bears the date of June 18, 1952, which was the date the contract was executed. Appellee argues that because these facts were not disclosed to it, there was a misrepresenta-

1. Code 1951, § 11–756 (Supp. VII).

2. Jackson v. Capital Transit Co., 1938, 69 App.D.C. 147, 99 F.2d 380, certiorari denied 1939, 306 U.S. 630, 59 S.Ct. 464, 83 L.Ed. 1032; Jones v. District of Columbia, D.C.Mun.App.1956, 123 A.2d 364, 366.

3. See, for example, the cases of Inman v. Baltimore & O. R. Co., 1959, 361 U.S. 138, 80 S.Ct. 242, 4 L.Ed.2d 198, and Sentilles v. Inter-Caribbean Shipping Corp., 1959, 361 U.S. 107, 80 S.Ct. 173, 4 L.Ed.2d 142.

4. See Metropolitan Life Ins. Co. v. Adams, D.C.Mun.App.1944, 37 A.2d 345, 348.

tion sufficient to void the policy. Appellant counters by saying that all salient facts concerning her health and employment status were fully disclosed to appellee's agent and that it cannot now assert this defense. However, as we have said, this need not be passed upon.[5]

On July 20, 1952, appellant was at her summer home when her two-year-old granddaughter "playfully threw herself on [appellant] with great force and caused [her] a great deal of pain." For the next five months appellant was under the care of Dr. William Hardesty and Dr. Harry Claud. The latter recommend removal of her gall bladder. In November, she wrote appellee requesting a claim for "sick" benefits under her policy. The reason she gave was her pending operation for removal of an inflamed appendix, the result of a "slight" accident the previous summer. In December both her gall bladder and appendix were removed and she was hospitalized three weeks. Under date of February 7, 1953, she filed a "Policyowner's Report of Disability," hereafter referred to as the claim. The accompanying "Attending Physician's Report" stated that appellant was either totally or partially disabled as a result of the operation from December 1, 1952, to February 28, 1953, and the "Employer's Statement" recited that "[u]nder date of 11/13/52 we were advised a contemplated operation made it necessary to request a further extension of leave which was granted not to exceed 5/29/53." Appellee, in brief, refused payment of this claim. Apparently, from a reading of the

claim, and consistent with the physician's report, appellant was not seeking compensation for loss of time dating back to July 1952, but rather for the three months' disability resulting from her operation. Nevertheless, she now asks judgment for loss of time commencing in July 1952.

Early in 1953 appellant discussed retirement with Dr. Hardesty and then applied for it. In June 1953 the Civil Service Commission acknowledged receipt of her application. She was then examined by Dr. Lawrence J. Thomas, and he recommended retirement because of the presence of "severe anxiety." He testified that appellant complained of fatigue, lack of energy, insomnia, irritability, absence of appetite, and upper abdominal discomfort and pain. Appellant informed him that these symptoms began after October 1951. Dr. Thomas testified that he found no abnormalities of heart, lungs or abdomen present.

Appellant's retirement was approved and she was separated from her employment on June 30, 1953. Testifying from her personnel record, a Department of Commerce representative said that the retirement was "optional," explaining that there was nothing compelling or compulsory about it but that it was a matter of choice.

This summary of the evidence demonstrates what we believe to be the basic issue on this appeal. The question is one of causation. That is, granting appellant a most favorable consideration of the evidence and all reasonable inferences, could the jury have reasonably concluded that

5. A photostatic copy of appellant's signed application for the insurance, with answers to the several medical questions, was attached to the policy. Those answers were certainly contrary to her claim of full disclosure of her condition. But, she says, the answers she gave were recorded by the agent on a separate piece of paper and she was unaware that they were not correctly transposed to the printed application. That paper is not in the record and the agent did not testify. On the other hand, appearing immediately above her signature was a printed statement that she agreed that the insurance was issued in reliance upon the truth and completeness of the written questions thereon, and that appellee was not bound by any statement to its agent not appearing here. On this point, see generally, Kavakos v. Equitable Life Assur. Soc., 1936, 66 App.D.C. 380, 88 F.2d 762, and Kaitlin v. Metropolitan Life Ins. Co., D.C.Mun.App.1949, 65 A.2d 188. See also, Nationwide Life Insurance Company v. Attaway, 4 Cir., 1958, 254 F.2d 30.

the occurrence of July 20, 1952, did in fact cause the loss of time from that date until July 1953 and thereafter. We think not, and in so saying we assume no dispute concerning the question of "disability." However, in the record a substantial question exists concerning the actuality of appellant's total and continuous disability as contemplated by the policy.

The problem of causation in insurance contracts has received considerable judicial thought in this jurisdiction. The case of Prudential Ins. Co. of America v. McKeever, D.C.Mun.App.1952, 89 A.2d 229, affirmed 1953, 92 U.S.App.D.C. 190, 204 F. 2d 59, expresses the rule that when the result is caused by an infirmity sufficient in itself to have brought about the result, no recovery is allowed even if an accidental injury, not itself sufficient to cause the result, aggravates the infirmity. The dissenting opinion in that case suggests that if the accidental injury is an exciting, efficient, and predominating cause, that would be sufficient causation even though the pre-existing condition was the predisposing cause.[6] Of course, that case was concerned with death benefits but we feel the thoughts there expressed generally apply here. This is not to say that the McKeever rule is controlling upon these facts. There, the court was concerned with exclusionary clauses which, as we read this contract, do not govern the provisions relating to loss of time and the word "injuries" here. Nevertheless, the reasoning found in that opinion cannot be disregarded.

We do not think appellant's evidence meets even a minimal standard of causation.

Dr. Hadley testified that anemia might be caused by one of three factors, all of which concern the red blood cells; that its effect was to interfere with the oxygen-carrying capacity of the blood, and its symptoms were nervousness, weakness, and lack of energy. He stated that he had treated appellant for anemia since 1937, with the exception of the period from February 1952 to 1956. When asked to compare appellant's disability in February 1952 to that of 1956 and up to the time of trial, he replied that nothing in his record would indicate that she was disabled or not disabled each time. The record does not disclose any testimony by this witness concerning the events of July 20, 1952, and appellant's condition thereafter; nevertheless, he was called as appellant's witness.

Dr. Thomas, after testifying that he recommended retirement because of "severe anxiety," a condition affecting the "whole individual," said there was no "organic abnormality present." Moreover, he said his diagnosis was based upon his own examination and the complaints dating back to October 1951 about which appellant informed him. He testified, in effect, that a physical disturbance could be a precipitating factor in a resulting nervous condition. When asked whether the December 1952 operation was a precipitating factor, he replied, in effect, that perhaps it could have been; however, since he was not appellant's physician at that time, he could express no opinion.

Among the exhibits is a letter, dated October 31, 1956, from Dr. Claud to appellee's counsel, in which he says: "There is no history of trauma [injury] being a factor in this case. In my opinion trauma did not cause the gallstones for which I operated on [appellant]." Dr. Hardesty wrote the Civil Service Commission under date of May 19, 1953, that he considered appellant "wholly unfit" to perform her duties. In this letter he makes reference to his treating appellant since 1942 for "chronic anemia" and "nervousness with extreme loss of personal confidence." He refers to the events in October 1951 and to the operation in December 1952 from

---

6. The rule in the McKeever case was again affirmed in Shulman v. Mutual Benefit Health and Accident Association, 1959, 105 U.S.App.D.C. 350, 267 F.2d 627.

which she, according to him, made a satisfactory recovery but with gastric disturbances and, seemingly, a failure to regain health. He does not mention her experience in July 1952. Finally, among the exhibits, there is a letter of recommendation generally addressed from appellant's office supervisor which makes no reference whatever to July 20, 1952. In fact, he was under the impression that the surgery was the ultimate result of the accident in October 1951.

We need not go further in showing why it is our conclusion that appellant has completely failed to demonstrate that the accident of July 20, 1952, caused or even aggravated the condition which resulted in her subsequent disability. The conclusion expressed in her letter of November 19, 1952, to appellee was, apparently, as devoid of factual foundation, when compared with her physicians' letters and testimony, as would have been a jury's verdict in her favor.

Affirmed.