SNIDER, APPELLANT, *v.* SIGNAL DELIVERY SERVICE, INC. ET AL., APPELLEES.

*Mr. George R. Ambro,* for appellant.

*Messrs. Graham, Dutro & Nemeth* and *Mr. Hubert C. Dutro,* for appellee Signal Delivery Service, Inc.

*Messrs. Bricker & Eckler* and *Mr. Elbert J. Kram,* for appellee Consolidated Rail Corporation.

MCCORMAC, J. Plaintiff-appellant, Charles Snider, has appealed the trial court's decision granting summary judgment in favor of defendant-appellee, Consolidated Rail Corporation ("Conrail"), asserting the following assignment of error:

"The court erred in granting defendant's motion for summary judgment, since genuine issues of material fact sufficient to preclude summary judgment do exist where plaintiff alleges negligence of his defendant employer in failing to provide him with a safe place to work and where plaintiff alleges violation by the

defendant employer of a federal safety statute where:

"1. Evidence shows plaintiff, while operating a locomotive engine, fearing he is about to be injured by the intrusion of a tractor-trailer rig into the locomotive engine window as the truck collided with the locomotive engine at a grade crossing, jumps up from his seat and, when the collision occurs, is injured by striking his back on a protruding brake lever and by striking or twisting his knee in the same movement; and,

"2. Where competent testimony by affidavit of an expert in the field of injury reduction effectiveness of seatbelts and related areas of accident research and investigation corroborates the causal relationship between the absence of seat belts and/or the design of the brake lever apparatus and the injuries suffered by the plaintiff; and,

"3. Where the applicable federal law for a jury case is whether there is evidence of any probative value that employer negligence played any part, even the slightest, in producing the injury for which damages are being sought."

Plaintiff sought recovery for personal injuries sustained while on the job as a railroad engineer for Conrail. He was injured when a tractor-trailer rig, owned by Signal Delivery Service, Inc., and driven by Marion Kowalski, defendants-appellees, collided with the train being operated by plaintiff at a grade crossing. The accident occurred on November 29, 1978, at approximately 10:45 p.m. The train had rounded a curve and was proceeding down a straight section of track as it neared the crossing, traveling between three and four miles per hour. The engine lights were on and the train blew its whistle and rang its bell before reaching the intersection. The intersection was properly marked with crossbuck signs.

At that time, plaintiff was seated in the engineer's seat, facing forward, located on the right side of the engine. He was able to look out through a window in front of him, and to his right, the direction from which the truck approached. He saw the truck moving in his direction and jumped out of his chair to avoid being injured as the front of the truck struck his side of the train. In so moving, he hit his back on a protruding brake valve, causing part of the injuries of which he now complains. The brake valve was contained in the brakestand, an upright cabinet containing the handles for the brake systems, positioned within reach on the left-hand side of the engineer's seat. The seat itself was not equipped with lap or shoulder belts. There were arm rests on either side which could be raised to allow the occupant to stand. On seeing the truck coming at his window, plaintiff raised the left arm rest and lifted himself out of the seat, hitting the brake valve as the truck hit the train. He also claimed to have hit his knee, although he could not say on what. Plaintiff immediately pulled the emergency brake valve, bringing the train to a stop. The front of the truck did not penetrate the engineer's car of the train.

Plaintiff charged Conrail with violation of Section 51 of the Federal Employers' Liability Act ("FELA") for negligent failure to provide him with a safe place to work and, more specifically, for failure to provide proper safety equipment within the locomotive when defendant knew, or in the exercise of reasonable care should have known, that such equipment would likely prevent injuries, such as those sustained here. Plaintiff further charged Conrail with violation of Section 22 of the Act, known as the Boiler Inspection Act. The trial court granted Conrail's motion for summary judgment, stating that the record showed no disputable issues of fact, leading to this appeal.

The pertinent provisions of FELA involved in this case are as follows:

"Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or

between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves or other equipment.

"Any employee of a carrier, or any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially, affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." (Section 51, Title 45, U.S. Code.)

The threshold test which must be met in order to take a case to the jury for violation of this section differs from the traditional proximate cause test in an ordinary negligence case. The FELA test was set out by the Supreme Court in *Rogers* v. *Missouri Pacific R.R. Co.* (1957), 352 U.S. 500, as follows:

"* * * [W]hether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, * * *." *Id.* at 506.

The court noted that the statute was enacted out of dissatisfaction with the common-law duty of master to servant, adding:

"* * * The statute supplants that duty with the far more drastic duty of paying damages for injury or death at work due in whole or in part to the employer's negligence. The employer is stripped of his common-law defenses and for practical purposes the inquiry in these cases today rarely presents more than the single question whether negligence of the employer played any part, however small, in the injury or death which is the subject of the suit. The burden of the employee is met, and the obligation of the employer to pay damages arises, when there is proof, even though entirely circumstantial, from which the jury may with reason make that inference." *Id.* at 507-508.

The court's holding in *Rogers* was later reiterated in *Gallick* v. *Baltimore & Ohio R.R. Co.* (1963), 372 U.S. 108, wherein it was stated:

"* * * And we have no doubt that under a statute where the tortfeasor is liable for death or injuries in producing which his 'negligence played any part, even the slightest' * * * such a tortfeasor must compensate his victim for even the improbable or unexpectedly severe consequences of his wrongful act. * * *" *Id.* at 120-121.

*Rogers* and *Gallick* broadened the liability of a carrier from that previously declared. In light of these cases, appellee's reliance on earlier decisions, primarily *Brady* v. *Southern Ry. Co.* (1943), 320 U.S. 476, is misplaced. In *Brady,* the court said there must be more than a scintilla of evidence to take a case to the jury and that, "[t]he carrier's negligence must be a link in an unbroken chain of reasonably foreseeable events." *Id.* at 484. This language conflicts with the *Rogers* holding that even the slightest

evidence of employer negligence is sufficient to go to the jury, and the holding in *Gallick* that an employer must compensate his employee for improbable or unexpectedly severe consequences. The FELA burden of proof applies strictly to all FELA cases, whether filed in state or federal court. *Mills* v. *Penn. N.Y.C., Transp. Co.* (1968), 16 Ohio St. 2d 97 [45 O.O.2d 447].

Applying the *Rogers* and *Gallick* test, plaintiff presented a jury issue of liability, and summary judgment was erroneously granted Conrail. There is no dispute that the Signal Delivery truck collided with the train in which plaintiff was riding. However, plaintiff was not injured by impact with the truck, but rather as a result of hitting himself on a protruding brake lever or other part of the interior of the cab, as he jumped away from the window in fear of the oncoming vehicle. The truck did not actually intrude into the engineer's car. Plaintiff testified that there were no seat or shoulder belts in the train, nor were there guards around the brake valves. As a result, he asserted that Conrail negligently failed to provide him with a safe place to work since it knew or should have known that the presence of seat belts, guards, and other such protective devices would have prevented his injury.

In support thereof, plaintiff attached an affidavit of an expert witness on accident research, investigation, and injury reduction effectiveness of seat belts. Dr. Donald Huelke stated:

"6. Had the Plaintiff been restrained in his seat by a lap-shoulder belt, his injuries would have been negated since no part of the intruding truck entered the cab of the locomotive."

"7. Had the Plaintiff been afforded the protection of a guard around the protuding levers on and near the control panel, or a design of the controls so that the same are recessed, his injuries would have been either negated or minimized."

Huelke qualified as an expert in this field, and his opinion was admissible for use in the summary judgment determination. See *Bridger* v. *Union Ry. Co.* (C.A. 6, 1966), 355 F.2d 382. In *Bridger*, a switchman suffered injury while flagging traffic at a crossing when he was struck by an oncoming truck. Opinion testimony by fellow workers as to the dangerous nature of the crossing was introduced to prove failure to provide a safe place to work under the FELA. The court upheld admission of this testimony in sending the case to the jury. The sworn testimony of Huelke, a qualified safety expert, was similarly admissible. Huelke's opinion created an inference of employer negligence within the boundaries set by *Rogers,* and establishes a genuine issue of fact, negating summary judgment.

Appellee cites *Inman* v. *Baltimore & Ohio R.R. Co.* (1959), 361 U.S. 138, for the proposition that there can be no FELA liability where a third person causes the accident. In *Inman,* the plaintiff was injured while flagging traffic at an intersection when an intoxicated driver ran through a stop sign and hit him. The accident occurred around midnight, but the crossing was well-marked and the plaintiff was waving lighted lanterns in each hand. Plaintiff charged his employer with negligent failure to provide a safe work place, but the court held that under the circumstances the connection was simply too thin, even under the strict *Rogers* standard, to hold the employer liable. The court noted that plaintiff had worked at the same crossing for seven years, including three years on the same midnight shift, without incident.

The *Inman* decision is distinguishable. The driver in *Inman* not only caused the accident, but actually inflicted the injuries. There was no connection with the employer whatsoever, unlike the present case where the driver, Kowalski, caused the impact, but the injuries sustained were inflicted as a result of equipment

owned by Conrail. Furthermore, as noted by Justice Whittaker, concurring in the *Inman* decision, no view of the evidence would allow one to conclude that the employer had in any way caused or contributed to the actions of a drunken driver in violating five traffic statutes and hitting the plaintiff. He added that no practical measures could have been taken by the employer to prevent such outrageous conduct. In this case, arguably preventative measures could have been taken by Conrail to secure the safety of its equipment for those who operate it, by installing seat belts and guardrails around protruding levers. Reasonable minds could, based upon the summary judgment record, find that such duty was owed to Conrail's employee as the likelihood of injuries like those sustained by plaintiff were foreseeable in the event of a collision.

Appellees argue that plaintiff caused his own injuries by getting out of his seat; however, common sense suggests that one faced with a perceived peril may instinctively retreat without regard to other less apparent dangers which might face him in that process. See *Rogers, supra.* Plaintiff debatably could not have been expected to sit still in the face of an oncoming truck, particularly in the absence of protective seat belt equipment.

In summation, the record, taken as a whole, is such that allows reasonable minds to differ on the question of Conrail's failure to provide plaintiff with a safe place to work.

Plaintiff's assignment of error is sustained, the judgment is reversed, and the cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

REILLY and NORRIS, JJ., concur.