Edward CONWAY, Plaintiff, Appellant,

v.

**CONSOLIDATED RAIL CORPORATION, Defendant, Appellee.**

Edward CONWAY, Plaintiff, Appellee,

v.

**CONSOLIDATED RAIL CORPORATION, Defendant, Appellant.**

Nos. 83–1344, 83–1371.

United States Court of Appeals, First Circuit.

Argued Sept. 14, 1983.

Decided Nov. 2, 1983.

George J. Cahill, Jr., New Haven, Conn., with whom Cahill & Goetsch, P.C., New Haven, Conn., was on brief, for Edward Conway.

Deirdre H. Harris, Boston, Mass., with whom Robert L. Farrell, and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for Consolidated Rail Corp.

Before BOWNES, Circuit Judge, ALDRICH and SKELTON *, Senior Circuit Judges.

BAILEY ALDRICH, Senior Circuit Judge.

These are cross appeals following a jury verdict for the plaintiff in an FELA case. 45 U.S.C. §§ 51 et seq. We need consider only the question of defendant's liability. Plaintiff Conway was a conductor in the employ of defendant Consolidated Rail

---

* Of the Federal Circuit, sitting by designation.

Corp., which supplied the services for a passenger train operated by Amtrak between Boston and New York. Plaintiff was injured assisting a female passenger to alight at Providence with what he described as a footlocker or suitcase. He, the only witness, stated this was "probably . . . four feet long and probably two feet wide." The third dimension, whether more or less than two feet, was not given. Nor, although plaintiff stresses weight in his brief, was there any evidence thereof, beyond whatever inference there may be from the fact that the passenger had apparently carried it on originally. Plaintiff had not seen her board, having had various duties before the train started.

The passageway from the car down to the station platform, somewhat ironically known as the "trap," presumably because it had a combination trap door and platform, was 28″ wide, 24″ between the handrails. Plaintiff observed that the passenger "couldn't handle the suitcase. She couldn't get down." "[I]t was hanging off the top stair . . . platform . . . a couple of feet. . . . I reached up with both hands. . . . She let the suitcase go and it came down on top of my chest." The difficulty, in other words, was not that the luggage was too large to pass through, but simply that the passenger had trouble handling the descent, and compounded the problem by letting go without warning.

Based on the stipulated fact that there was "no rule or regulation with respect to taking luggage aboard an Amtrak car," viz., so as to provide that items beyond some (unspecified) size be excluded in order to prevent such occurrences, plaintiff claims he was not furnished a safe place to work. He introduced no evidence that any other railroad had a rule on this subject. *See Kuberski v. New York Central R.R.,* 2 Cir., 1966, 359 F.2d 90, 95 (evidence of industry practice should be the test of employer diligence, in the absence of proof to the contrary). *Cf. Lynch v. Pennsylvania R.R.,* 1947, 320 Mass. 694, 71 N.E.2d 114 (limitation with respect to luggage permitted inside the car, as distinguished from the vestibule). Nor was there any expert testimony, either as to need, or how size should be regulated.

Luggage is important to passengers, and carry-on is an expected convenience. Passengers of every sort and strength travel on trains. Plaintiff conceded that others had carried footlockers without incident. A rule restricting luggage to an arbitrary maximum that all passengers could comfortably handle would manifestly exclude much more than footlockers, and would work to the serious disadvantage of a great many.

It is black letter law that an FELA plaintiff is not entitled to absolute security; the act, unlike workmen's compensation statutes, does not make the employer an insurer. *Inman v. Baltimore & Ohio R.R.,* 1959, 361 U.S. 138, 140, 80 S.Ct. 242, 243, 4 L.Ed.2d 198. It "does not contemplate absolute elimination of all dangers, but only the elimination of those dangers which could be removed by reasonable care on the part of the employer." *Padgett v. Southern Ry.,* 6 Cir., 1968, 396 F.2d 303, 306. Reasonable care must mean reasonable in light of the normal requirements of the job. A yardman dealing with moving cars cannot expect the same safety as a clerical worker in a ticket office. Here luggage is part of the work. A conductor cannot expect that capable male passengers be limited to packages that can be carried, without needing help, by less capable females; but the alternative would be varying maximums, based upon sex, age, or whatever, in operation worse, even if not regarded as discriminatory.

Plaintiff would revolutionize the railroad industry because of one unwise passenger in twenty-seven years—this was apparently plaintiff's first such accident. *Cf. Inman,* ante, (not negligence not to anticipate accident that had not occurred during plaintiff's seven years on the job); *cf. New York, New Haven & Hartford R.R. v. Cragan,* 1 Cir., 1965, 352 F.2d 463, *cert. denied,* 386 U.S. 1035, 87 S.Ct. 1488, 18 L.Ed.2d 501. Even if trouble from passenger clumsiness be thought more foreseeably

possible, this was part of the job. Assuming no threat to other passengers, *cf. Lynch v. Pennsylvania R.R.,* ante, we are unpersuaded that there should be such absolute limitations on carry-on luggage as would achieve total security for conductors.

Although plaintiff argues it only in terms of affecting the issue of contributory negligence, we will deal with his claim that the court erred in excluding his testimony that he did not "have any authority to stop a passenger from boarding a train with a footlocker," in case such evidence be thought material to the issue of defendant's negligence. Our first question is how, under any circumstances, he was hurt by the exclusion of this testimony. We observe at the outset that his counsel stated to the jury, in positive terms, that this was what the record already showed.

"Now, Mr. Conway has no authority to tell passengers that they can't bring the luggage on the train. All he can do is perform his job. In order for him to instruct any passenger that the suitcase is over-dimensional, or this footlocker, he would have to have the authority to do so. There would have to be a rule or regulation stating that there is limitations on baggage being brought upon the coaches. There is no such rule, and this is what the plaintiff believes is an unreasonable risk to Mr. Conway."

Neither the defendant nor the court objected to this statement. Plaintiff would run with the hare and hunt with the hounds. If this was what the stipulation meant, he could not be prejudiced by not being allowed to testify to like effect; the stipulation ended the matter. If it was not what it meant, it was most improper to tell the jury otherwise.

 Although this should end the matter regardless of what the stipulation meant, we remark that the court was correct in any event. It interpreted the proposed testimony to relate to written rules and regulations, and held that as to this plaintiff's proffer was not the best evidence. It stated, however, that the witness could testify "what his responsibilities are." This avenue plaintiff failed to pursue.

 The wisdom of the court's ruling was demonstrated when, on cross-examination of plaintiff, defendant inquired, and brought out that he was "responsible to see to the safe passage of the passengers ... [and was] in control of the entire train." On this basis plaintiff's proposed testimony that he could not exclude a footlocker (on the assumption that it was unsafe) was a legally incorrect conclusion. The power to exclude articles truly unsafe was inherent in what plaintiff said were his responsibilities. There was no error in the ruling.

Plaintiff's other points are mooted.

Judgment for defendant.