**John J. O'CONNELL,**
**Plaintiff–Appellant,**

v.

**NATIONAL RAILROAD PASSENGER**
**CORPORATION, Defendant–Appellee.**

**No. 264, Docket 90–7425.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 1, 1990.

Decided Jan. 8, 1991.

John F. Collins, Buffalo, N.Y. (Collins, Collins & DiNardo, Buffalo, N.Y., of counsel) for plaintiff-appellant.

Ignatius John Melito, New York City (Karen E. Heller, Siff, Rosen & Parker, P.C., New York City, of counsel) for defendant-appellee.

Before CARDAMONE and MINER, Circuit Judges, and POLLACK, Senior District Judge.[*]

MINER, Circuit Judge:

Plaintiff-appellant John J. O'Connell appeals from a judgment entered in the United States District Court for the Southern District of New York (Metzner, *J.*), after a jury verdict in favor of defendant National Railroad Passenger Corporation ("Amtrak"), dismissing claims asserted under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.* (1988) and the Boiler Inspection Act ("BIA"), 45 U.S.C. §§ 22–34 (1988). O'Connell alleged that he had sustained a personal injury during the course of his employment with Amtrak and sought compensatory damages. On appeal, he argues that the district court erred by refusing to allow the jury to consider evidence of certain working conditions that existed at the time of his injury. He also argues that the court erred by prohibiting him from presenting to the jury the specific language of federal regulations promulgated under the BIA and by refusing to refer to the regulations in the jury instructions. Finally, he con-

[*] Of the United States District Court for the Southern District of New York, sitting by designation.

tends that it was error for the trial court not to charge the jury on the defense of assumption of risk and on Amtrak's duty to inspect.

We hold that, under the FELA, O'Connell sufficiently demonstrated a link between the excluded evidence and the injury to require that the evidence be considered by the jury. With regard to the court's refusal to instruct the jury on the BIA regulations, assumption of risk, and the duty to inspect, we hold that the district court did not err.

We reverse and remand for a new trial at which the excluded evidence may be considered.

## BACKGROUND

O'Connell worked for Amtrak as a railroad conductor. His responsibilities as a conductor included placing blocks under the wheels of the railroad cars of trains that arrived at the station and uncoupling the parked cars from the locomotives by removing the electrical cables that joined them.

On December 1, 1987, O'Connell went down into the "pit" area beside the passenger platform to uncouple a train that had arrived at the station. He testified at trial that "there was numerous [sic] debris.... [a]ll over" the area in which he worked. He also testified that an electrified third rail passed alongside the train tracks through the "pit".

After disconnecting several cables from their receptacles on the locomotive, he encountered difficulty in pulling one cable. O'Connell testified that he repositioned himself several times to gain greater leverage as he pulled harder at the cable, and then "felt something happen" that caused him pain in his back and "tingling" in his shoulders. There were no witnesses to the event. O'Connell continued his efforts and eventually freed the cable. Examining the cable, O'Connell saw attached to one end a plastic strap that he had not seen while tugging on it. Considerable evidence was introduced by Amtrak showing that plastic straps are commonly used in the railroad

industry to secure cables and that O'Connell was aware of their usage.

O'Connell did not think that he had suffered a severe injury and continued to work that day. He informed his supervisor of his difficulty in dislodging the cable. Medical attention was offered to O'Connell, but he declined it. The supervisor prepared an Investigation Committee Report ("Report") as follows:

[O'Connell] had trouble with one cable and felt a slight pull in lower right arm. CAUSE: Tight cables—conductor had trouble and felt soreness in right arm.

The supervisor listed as "contributing factors" to the incident "poor working conditions[,] ... men must get between car and engine—[electrified] 3rd rail[,] poor lighting[,] close clearances," and described the housekeeping and ground conditions as "poor" and the lighting as "very poor." He recommended in the Report that "working conditions such as lighting" be improved. Later that day, Amtrak's maintenance engineer examined the locomotive and found no defects in it.

Over the course of the next two months, O'Connell went to a chiropractor and an orthopedist, complaining of a loss of strength in his hands. However, he continued to perform his regular duties as a conductor until February 20, 1988, when he stopped working for Amtrak, claiming medical disability. O'Connell brought this action in June, 1989, seeking to recover from Amtrak damages for lost wages, future lost wages, and pain and suffering.

Before trial, the parties stipulated into evidence the Report, but, at the conclusion of the evidence, the trial court refused to allow the jury to consider any of the "contributing factors" and working conditions listed in the Report, other than poor lighting. The trial judge found that O'Connell had failed to demonstrate any causal link between the other conditions and the injury. The court also refused to allow plaintiff's attorney to read to the jury, or to include in the jury instructions, regulations promulgated under the BIA. The judge stated that his instructions were sufficient on the applicable law, and that O'Connell

had not offered evidence that Amtrak had violated the regulations. Finally, the trial court refused O'Connell's request to charge the jury on assumption of risk and on Amtrak's duty to inspect.

## DISCUSSION

■ We find that the district court erred in refusing to allow the jury to consider the entire Report, including all portions that described unsafe working conditions.

■ The FELA provides, "Every common carrier by railroad while engaging in commerce between any of the several States ... shall be liable in damages to any person suffering injury while he is employed by such carrier." 45 U.S.C. § 51. Under the FELA, a trial court must liberally construe evidence submitted by a plaintiff to determine the jury charge:

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played any part at all in the injury or death.

*Rogers v. Missouri Pacific R.R.*, 352 U.S. 500, 506–07, 77 S.Ct. 443, 448–49, 1 L.Ed.2d 493 (1957) (footnotes omitted). This Circuit has repeatedly invoked the *Rogers* standard in reviewing FELA claims. *E.g., Miller v. Erie Lackawanna Ry.*, 645 F.2d 140, 144 (2d Cir.1981); *Eggert v. Norfolk & Western Ry.*, 538 F.2d 509, 511 (2d Cir. 1976); *Fitzgerald v. A.L. Burbank & Co.*, 451 F.2d 670, 681 (2d Cir.1971).

■ It is well-settled that "the role of the jury is significantly greater in FELA cases than in common law negligence actions." *Eggert*, 538 F.2d at 511. "To de-prive [FELA plaintiffs] of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them" under the statute. *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444 (1943); *see also Atlantic & Gulf Stevedores v. Ellerman Lines*, 369 U.S. 355, 360, 82 S.Ct. 780, 784, 7 L.Ed.2d 798 (1962) (Congress intended that "trial by jury is part of the remedy" under the FELA); *Gallose v. Long Island R.R.*, 878 F.2d 80, 84 (2d Cir.1989) (under the FELA, jury's right to determine the issue of employer's liability must be liberally construed). This is not to say that where "the evidence ... [is] so thin that, on a judicial appraisal, the conclusion must be drawn that negligence on the part of the [employer] could have played no part in [plaintiff's] injury," the jury must consider it nonetheless. *Inman v. Baltimore & Ohio R.R.*, 361 U.S. 138, 140, 80 S.Ct. 242, 244, 4 L.Ed.2d 198 (1959). But, in this case, to justify the refusal to submit evidence of certain unsafe working conditions to the jury, there must be no possibility that the conditions could have in any way caused O'Connell's injury.

■ The district court's conclusion that O'Connell failed to introduce evidence suggesting a causal link between the working conditions described in the Report and his injury is incorrect. Although, under the evidence submitted by plaintiff, the connection between such conditions and the injury may be tenuous, the evidence should be submitted to the jury if it satisfies the liberal *Rogers* standard. The district court concluded that no reasonable jury could find that the excluded working conditions had caused O'Connell's injury. However, we think that in this case, a jury could reasonably find that the conditions "played [a] part, even the slightest" in causing O'Connell's injury. At trial, O'Connell testified that he "was trying to get the best position [he] could to pull," and that he repositioned himself several times during the course of his efforts. His supervisor, although not himself an eyewitness, testified that decoupling was performed in

"tight clearances between locomotives and cars." Additionally, the Report stated that the working conditions were "contributing factors" to the incident. Based on this evidence, a jury could reasonably infer that O'Connell's maneuvering at the time was caused in part by the need to avoid the high voltage third rail while pulling on cables in the close quarters between train cars and, thus, could reasonably infer that his injury was caused in part by the conditions described in the Report.

Amtrak cites *Mandel v. Pennsylvania R.R.*, 291 F.2d 433 (2d Cir.), *cert. denied*, 368 U.S. 938, 82 S.Ct. 379, 7 L.Ed.2d 337 (1961) and *Presser Royalty Co. v. Chase Manhattan Bank*, 272 F.2d 838 (2d Cir. 1959) for its contention that the full Report should have been kept from the jury, and that failure by the trial court to do so might itself have been reversible error. However, these cases are inapposite because both were diversity cases involving claims brought exclusively under state law.

We also find that the district court properly refused to grant O'Connell's requests to have selected BIA regulations read to the jury either as part of his direct case or as part of the charge.

It is the role of the judge in a trial to apprise the jury of the law to be applied to the facts before it. 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2556 (1971); *see National R.R. Passenger Corp. v. One 25,900 Sq. Ft. More or Less Parcel of Land*, 766 F.2d 685, 688 (2d Cir.1985); *Radiation Dynamics, Inc. v. Goldmuntz*, 464 F.2d 876, 887 (2d Cir. 1972). It would have been improper to allow the plaintiff's lawyer to read federal regulations to the jury during his case-in-chief.

The court's refusal to specifically instruct the jury at the trial's end as to the various BIA regulations requested by O'Connell also was proper. Primarily in contention were the regulations requiring daily inspections of locomotives, 49 C.F.R. § 229.21 (1990)[1], and prohibiting the use of

"[b]roken or badly chafed [cable shaft] insulation." 49 C.F.R. § 229.89. Yet, no evidence was offered by O'Connell showing that Amtrak had failed to comply with either regulation. Plaintiff's testimony showed not that the cable was defective, but that his struggle with it was due to his failure to remove the plastic tie straps that are commonly used to secure coupling cables. O'Connell emphasizes the fact that the only evidence of Amtrak's inspection of the cables was the testimony of its maintenance engineer. However, this is not relevant because the burden was on O'Connell to show a breach by Amtrak of its duty to inspect.

Although the court prevented O'Connell from discussing at trial the specific regulations he considered applicable, O'Connell was free to introduce evidence of the violation of such obligations but failed to do so. Thus, the specific regulations could not later become relevant for jury consideration. *Cf. Eckert v. Aliquippa & Southern R.R.*, 828 F.2d 183, 186–87 (3d Cir.1987) (violation of regulations instituted to implement safety statute constitutes FELA cause of action and claim must be submitted to jury unless liberal *Rogers* standard not met).

The judge gave the following instructions regarding plaintiff's claim of violations of the BIA:

> The Boiler Inspection Act places an absolute duty on the defendant railroad to maintain in proper condition and as safe to operate the parts and appurtenances of its locomotives, which would include the cables. Plaintiff argues that defendant failed to maintain its electrical cables in proper condition and that this violation brought about plaintiff's injuries.

We find that, under the evidence presented, this instruction sufficed to apprise the jury of O'Connell's claim, because it contained the part of the regulations that was relevant, namely, Amtrak's absolute duty in regard to the maintenance of equipment.

---

**1.** Both parties mistakenly identify the daily inspection provision in their briefs as 49 C.F.R. § 229.*19*. Section 229.19, however, deals with the waiver of general safety regulations and is unrelated to the inspection requirement, which is actually found in section 229.21.

Finally, we find that the district court properly refused to charge the jury regarding assumption of risk and duty to inspect. Amtrak did not raise assumption of risk as a defense at trial. Indeed, it could not have done so because the FELA abolishes all common law defenses that an employer might raise. *Rogers,* 352 U.S. at 507–08, 77 S.Ct. at 448–50; *see also* 45 U.S.C. § 54. Because " '[o]rdinarily it is a mistake to give instructions on subjects not directly in issue in a case,' " the district court properly refused to give the requested charge. *DeChico v. Metro–North Commuter R.R.,* 758 F.2d 856, 861 (2d Cir.1985) (quoting *Clark v. Pennslyvania R.R.,* 328 F.2d 591, 595 (2d Cir.), *cert. denied,* 377 U.S. 1006, 84 S.Ct. 1943, 12 L.Ed.2d 1054 (1964)). Similarly, the refusal to instruct on the duty to inspect was correct since O'Connell failed to introduce evidence to warrant presenting that issue to the jury.

## CONCLUSION

We reverse the judgment for defendant because of the district court's erroneous refusal to allow the jury to consider the entire contents of Amtrak's investigation report. We remand for further proceedings consistent with this opinion.