■ ROBERT PIDGEON, Appellant, v METRO-NORTH COMMUTER RAILROAD, Respondent. [670 NYS2d 833] —Order, Supreme Court, New York County (Leland DeGrasse, J.), entered on or about April 14, 1997, which granted defendant's motion for summary judgment, unanimously reversed, on the law, without costs, the motion denied, and the complaint reinstated.

The motion court erred in holding that plaintiff's showing was insufficient to create issues of fact as to negligence and notice.

The Federal Employers' Liability Act ([FELA] 45 USC § 51 *et seq.*), upon which plaintiff has based his action, generally provides that every railroad "shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce * * * for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 USC § 51.)

The test as to whether a case under FELA is to be submitted to a jury is whether the proofs submitted justify the conclusion that the employer's negligence played any part, even the slightest, in producing the death or injury for which damages are sought: "It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that negligence of the employer played *any part at all* in the injury or death" (*Rogers v Missouri Pac. R. R. Co.*, 352 US 500, 506-507 [emphasis added]; *see, Curley v Consolidated Rail Corp.*, 178 AD2d 318, *affd* 81 NY2d 746, *cert denied* 508 US

940). A case is deemed unworthy of submission to a jury only if evidence of negligence is so thin that on a judicial appraisal, the only conclusion that could be drawn is that negligence by the employer could have played no part in an employee's injury (*see, e.g., Inman v Baltimore & Ohio R. R. Co.,* 361 US 138, 140-141).

Of course, the defendant must have had notice, either actual or constructive, of the alleged condition that caused the plaintiff's injuries (*see, e.g., Kelsey v Port Auth.,* 52 AD2d 801). Moreover, where the hazard is recurring, there must be sufficient evidence to charge the defendant with constructive notice of each recurrence of the hazardous condition (*see, e.g., Alvarez v Mendik Realty Plaza,* 176 AD2d 557, 558, *lv denied* 79 NY2d 756).

Plaintiff alleges that on August 6, 1990, while he was employed as a plumber for Metro-North Commuter Railroad (Metro North) at the Hastings-on-Hudson station in Westchester County, he was injured when he slipped and fell on a staircase at that station, where he was working as part of a team remodeling the station ladies' room. Between 12:30 and 1:00 P.M. that day, plaintiff was returning to the basement level after having lined up a plumb bob from the ladies' room down to a fellow co-worker in the basement. As he was walking down the stairs from the interior of the station toward the platform on his way back to the basement, he slipped and fell on the bottom step. The staircase leading from the station to the platform was covered by a roof that extended out over the platform. Plaintiff testified that an accumulation of water was present on the step, and that the two or three steps above the one on which he slipped were also wet; there was also a small puddle at the bottom of the stairs. Plaintiff asserted that the water had come through the roof above the stairway.

Defendant based its motion for summary judgment upon the open-air quality of the station staircases and platforms, which are covered merely by an overhead canopy and thus are not fully protected from rain. Moreover, defendant submitted a meteorologist's report with climatological data, indicating that the total rainfall in the vicinity of Hastings-on-Hudson on August 6, 1990 was 2.26 inches, the majority of which fell between midnight and 9:00 A.M. that day, with occasional showers falling throughout the rest of the day. Defendant argued, essentially, that it cannot be required to keep outdoor public steps dry on rainy days.

In response, plaintiff submitted affidavits asserting that at the time of his accident there was a leak in the roof im-

mediately above the stair in question. An affidavit by a fellow employee at Metro North, Joe Kendall, asserted, *inter alia,* that he had been working at the Hastings station for about a month prior to plaintiff's accident, and that the staircase where plaintiff fell was covered by a roof, part of which would leak when it rained, thereby causing water to fall upon those steps. Indeed, this employee asserted that at one point, he himself almost fell on the stairway due to the accumulation of water.

Plaintiff also submitted an expert's affidavit that asserted that with regard to the source of the water on the stairs, an inspection of the underside of the roof indicated that the roof was originally constructed of tongue and groove subflooring that was replaced with plywood. According to plaintiff's expert, this plywood showed water damage, "specifically delamination. This has taken place in the first 2 feet of the underside of the floor as measured from the beginning/end of the stairs. Additional water-marked areas were found to exist within the first 6 feet of the roof underside, covering treads 1-6. These water marks are generally found at the cross beams which are at 2 foot centers. Cross beams 2 and 3 clearly show a long-term exposure to storm water runoff from the roof."

In concluding that no triable issue of fact existed, the IAS Court ignored the evidentiary submissions tending to show that the roof over the stairs had been allowed to remain in an unsafe condition, thereby permitting the pooling of water on the subject stairs. Furthermore, while the photographs in the record demonstrate that the staircase in question is indeed partially exposed on the sides to the elements, it is also clear that by erecting a roof over the staircase, defendant must have intended the staircase to offer protection from the elements. Moreover, plaintiff's assertion that the stairs were dry until he reached the bottom further supports the inference that the water at the bottom portion of the staircase could have leaked from the section of the roof immediately over it.

On the issue of notice, Kendall's assertion that he had been working at the station for a month prior to plaintiff's accident, and his observation that the roof often leaked on rainy days, raise an issue of fact as to whether the condition of which plaintiff complained had been present for some time. In addition, his affidavit suggests that the station roofs are subject to frequent inspection. Finally, the affidavit of plaintiff's expert also suggests that water damage had existed for some time on the portion of the roof covering the stair on which plaintiff fell. These documents also tend to establish that the leak in the roof caused the portion of the steps in question to be wet *when-*

*ever* it rained, thereby establishing a recurring condition of which defendant and/or its agents and employees should have been aware. The IAS Court's reliance on such cases as *Mc-Clinchy v National R. R. Passenger Corp.* (198 AD2d 126, *lv dismissed and denied* 83 NY2d 942) and *Gordon v American Museum of Natural History* (67 NY2d 836 [1986]) was misplaced, since in those cases there was no evidence of notice of the hazard.

Finally, we reject defendant's argument that the Kendall affidavit should not even have been considered by the IAS court since this evidence was not exchanged prior to the filing of the note of issue or at any time during the six-year period before defendant moved for summary judgment. The condition of the leaky roof was clearly set forth initially in plaintiff's Bill of Particulars, thereby putting defendant on notice that plaintiff was arguing that said condition was the proximate cause of his injuries. Since the Kendall affidavit provided more in the way of amplification than variance, it cannot be said that defendant was prejudiced by it (*see, e.g., Taveras v Equitable Life Assur. Socy.*, 221 AD2d 166).

Also meritless is defendant's argument that the affidavit of plaintiff's expert should not have been considered at all since plaintiff failed to provide a proper response to defendant's notice for discovery and inspection of expert witness information. Plaintiff's prior counsel provided defendant with CPLR 3101 (d) responses, attached to plaintiff's expert's affidavit. In these responses, which were dated April 29, 1993, plaintiff's counsel identified the expert and contended that said expert would testify as to defendant's failure to maintain the platform and stairs, its failure to inspect the Hastings train station and its failure to keep the roof and platform in a safe condition. Hence, even if plaintiff's cross-motion and defendant's opposition thereto had been considered by the court, defendant's contentions in this respect could properly have been rejected. Concur—Wallach, J. P., Rubin, Williams, Mazzarelli and Saxe, JJ.